# September Term 1921

## No. 9772.

THE PEOPLE *v.* THE UNITED MINE WORKERS OF AMERICA, DISTRICT 15, ET AL.

Decided April 4, 1921.   Rehearing Denied October 3, 1921.

Bill by the people to enjoin coal miners from striking. Bill dismissed.

### *Reversed.*

1, PUBLIC INTEREST—*Coal Mining.*   The business of coal mining is "affected with a public interest", as that phrase is used in section 30, chapter 180, S. L. 1915, concerning lockouts and strikes.

2. CONSTITUTIONAL LAW—*Legislative Enactment.*   The contention that chapter 180, S. L. 1915, relating to the industrial commission, was not regularly passed because the purpose of the bill was changed during its course through the two houses, considered and overruled.

3. STRIKES AND LOCKOUTS—*Legislation—Constitutionality.*   Section 33, chapter 180, S. L. 1915, forbidding incitement to lockout or strike, is not in violation of the provision of the state constitution concerning freedom of speech.

*Error to the District Court of the City and County of Denver, Hon. Charles C. Butler, Judge.*

Mr. VICTOR E. KEYES, attorney general, Mr. CHARLES ROACH, deputy, for the people.

Mr. HENRY COHEN, for defendants in error.

Mr. H. E. CURRAN, *Amicus Curiae.*

*En banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

BILL by the People to enjoin coal miners from striking before or during the consideration of their grievances by the Industrial Commission. The bill was dismissed and the People obtained a writ of error from this court and filed their brief July 9th, 1920. The defendants in error have favored us with no brief.

The bill was based more particularly upon section 30, chapter 180, of the acts of 1915.

"Sec. 30. It shall be unlawful for any employer to declare or cause a lockout, or for any employe to go on strike, on account of any dispute prior to or during an investigation, hearing or arbitration of such dispute by the commission, or the board, under the provisions of this act; *Provided,* that nothing in this act shall prohibit the suspension or discontinuance * * * of any industry or of the working of any persons therein which industry is not *affected with a public interest.*"

The questions argued below were: First, whether the act was passed in a constitutional manner, and Second, if it was, whether it violated any of the provisions of the constitutions of the state of Colorado or of the United States; but the court decided that the occupation of coal mining was not an industry "affected with a public interest" and therefore not within the terms of the act, and accordingly dismissed the bill.

The learned judge who tried the case based his decision upon *In re Morgan,* 26 Colo. 415, 429, 58 Pac. 1071, 1076 (47 L. R. A. 52, 77 Am. St. Rep. 269), where the court, speaking through Chief Justice Campbell, said:

"The business of operating smelters and working underground mines is purely a private business. It is not affected with a public interest, or devoted to a public use. * * * Hence, smelting does not come within the operation of the principle of those decisions in which have been

upheld reasonable regulations of a business affected by a public interest."

The real question before the court in that case was whether the industry of smelting ore was affected with a public interest. The question whether underground mining was so affected arose only incidentally because underground mining, in the act there in question, the so-called eight hour labor act, was classed with work in smelters. The remarks of the Chief Justice were doubtless directed to the mining of ores, in respect to which they were appropriate; but although his statement was broad enough, as the court below justly remarked, to cover the industry of coal mining, yet we cannot think that he had that industry in mind, the question before him being in regard to smelters which naturally connoted mining of ores. The case does not hold and we hardly believe he would have said that the mining of coal was not affected with a public interest.

Then, too, a business by circumstances and in its nature may rise from a private to a public concern. *German, etc., Co. v. Kansas,* 233 U. S. 411, 34 Sup. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189, and since the decision of the Morgan case (1899) the rapid development of the relations of the coal miners, the coal operators and the public have produced a situation very different from that which then existed. Because of these considerations we do not think that the Morgan case controls this one. However, if the statute in question is not constitutional, the dismissal of the bill was right and must be affirmed.

Unless coal mining may be said to be affected with a public interest its regulation by statute to the extent attempted by said chapter is unconstitutional, see the cases cited below. The words "affected with a public interest" were no doubt used by the General Assembly to keep the statute within constitutional limits. It becomes necessary then, not only in order to construe the statute but to decide whether it is constitutional, to determine whether coal mining is so affected, and it seems self-evident that it is.

We must take judicial notice of what has taken place in this and other states and that the coal industry is vitally related not only to all other industries but to the health and even the life of the people. Food, shelter and heat, before all others, are the great necessities of life and, in modern life, heat means coal.

In 1902 the great anthracite coal strike threatened the social stability of several of the great states, and recently, in the neighboring state of Kansas, under the maxim "*Salus populi lex suprema est*," the Governor seized the coal mines, when a strike had stopped the production of coal, and operated them with volunteers until the emergency had passed. Other instances might be cited. Can it be said that a business with such possible consequences is not affected with a public interest? The answer must be No.

The authorities are decidedly in favor of this conclusion. The leading case is *Munn v. Illinois*, 94 U. S. 132, 24 L. Ed. 77, which involved contracts by grain elevators. In *State v. Barrett*, 172 Ind. 169, 179, 87 N. E. 7, coal mining was held to be affected with a public interest. The regulation of interest on loans of money is so familiar we do not even notice it. The following are some of the cases on the subject: *Budd v. New York*, 143 U. S. 517, 21 Sup. Ct. 468, 36 L. Ed. 247; *The Sinking Fund Cases*, 99 U. S. 700, 747, 25 L. Ed. 504; *German, etc., Co. v. Kansas*, 233 U. S. 389, 411, 34 Sup. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189; *Brechbill v. Randall*, 102 Ind. 528, 1 N. E. 362, 52 Am. Rep. 695; *Hockett v. State*, 105 Ind. 250, 258, 5 N. E. 178, 55 Am. Rep. 201; *Webster Telephone Case*, 17 Neb. 126, 22 N. W. 237, 52 Am. Rep. 404; *Mobile v. Yuille*, 3 Ala. (N. S.) 137, 140, 36 Am. Dec. 441; *Stock Exchange v. Board of Trade*, 127 Ill. 153, 19 N. E. 855, 2 L. R. A. 411, 11 Am. St. Rep. 107; *Cutsinger v. Atlanta*, 142 Ga. 555, 564, 83 S. E. 263, L. R. A. 1915B, 1097, Ann. Cas. 1916C, 280; *Davis v. State*, 68 Ala. 58, 44 Am. Rep. 128; *Baker v. State*, 54 Wis. 368, 12 N. W. 12; *Girard Co. v. Southwark Co.*, 105 Pa. 248, 252; *Inter-Ocean Co. v. Asso. Press*, 184

Ill. 438, 56 N. E. 822, 48 L. R. A. 568, 75 Am. St. Rep. 184.

One reason for holding a business to be affected with a public interest is that it is a practical monopoly. *German, etc., Co. v. Kansas*, 233 U. S. 389, 416, 34 Sup. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189; *Budd v. New York,.* 143 U. S. 517, 537, 12 Sup. Ct. 468, 36 L. Ed. 247; *Nash v. Page*, 80 Ky. 539, 545, 44 Am. Rep. 490.

There can be no question that the production of coal is, at the present time, affected with a public interest, to a certainty and an extent not less than any other industry; consequently coal mining is within the terms of chapter 180, S. L. 1915, and it follows that that statute does not violate any constitutional provision as to due process or liberty of contract, as appears from the cases cited above.

There is no involuntary servitude under this act. Any individual workman may quit at will for any reason or no reason. There is not even prohibition of strike. The only thing forbidden is a strike before or during the commission's action.

As to whether House Bill 177, now chapter 180, S. L. 1915, was regularly passed: The objection seems to be that the original purpose of the bill was changed by amendment during its course through the two houses, in violation of article V, section 17 of the Colorado constitution; we cannot find however, that such was the case.

It would seem that House Bill 177 and Senate Bill 99 were identical, that each was cut in two, that which was cut from one remaining in the other. The latter emerged as chapter 179, providing workmen's compensation, and the former as chapter 180 of the acts of 1915, establishing an industrial commission to administer and enforce the other, each with amendments of more or less importance, but none which altered the original purpose. That was and continued to be to provide for workmen's compensation and an industrial commission.

That the purpose of the General Assembly in passing the two bills was the purpose of the original bill there can be no doubt. What would have been the effect if one had

passed and the other had failed we are not now called upon to say. It is enough to say that, after all the amendments, the final passage of the two amended bills effected the purpose of the original.

It is objected that section 33 of the act in question forbidding incitement to lockout or strike violates article II, section 10 of the state constitution concerning freedom of speech; but, if the legislature has power to forbid anything, it has power to forbid incitement thereto. See R. S. 1908, section 1620, on accessories.

The judgment should be reversed.