## No. 19,620.

PEOPLE OF THE STATE OF COLORADO *v.*
JOHN MARK NOTHAUS.
(363 P. [2d] 180)

Decided July 3, 1961.   Rehearing denied July 31, 1961.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. CHARLES S. THOMAS, Assistant, for plaintiff in error and for intervenor.

Mr. JOHN C. YOUNG, JR., for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

DEFENDANT in error was tried and convicted before a Justice of the Peace in Cripple Creek, Teller county, upon a complaint in which it was alleged that on November 17, 1959, he drove a motor vehicle while under a suspension order issued by the Motor Vehicle Department of the State of Colorado. The case was appealed to the county court of Teller county where all material facts were agreed to by stipulation of counsel. The pertinent facts are as follows:

On January 10, 1959, on a public highway in Teller county, a horse was struck by a motor vehicle driven by defendant. The director of revenue, upon receiving a report of the accident from one Dobbie, and acting under

the purported authority of C.R.S. '53, 13-7-7, suspended the operator's license which had theretofore been issued to defendant. The suspension followed the failure of defendant to "deposit security in a sum which shall be sufficient in the judgment of the director to satisfy any judgments for damages resulting from such accident as may be recovered * * * " against the defendant as required by the statute above cited. Defendant admitted receiving notice of the "cancellation" of his operator's license, and also admitted that notwithstanding the receipt of said notice he thereafter drove a motor vehicle at the time and place named in the summons and complaint filed against him. The sole defense relied upon by him was, and is, that those sections of the Safety responsibility Law, and those statutory provisions purporting to authorize a revocation of defendant's operator's license without a hearing or trial, are unconstitutional. The substance of the pertinent statutory provision follows.

Under section C.R.S. '53, 13-7-6, every operator or owner of a motor vehicle in an accident, accompanied by injury to person or property damages of fifty dollars ($50.00) or more, is required to file with the Motor Vehicle Division of the Department of Revenue, within ten days, a report of what occurred. Failure to file such report is upon pain of having the party's license summarily suspended — not for fault in the accident, negligent driving or wrongdoing, but merely for failure to obey. By the terms of 13-7-6 the aforesaid report is required to be made to the director of revenue by all parties, whether they are or are not guilty of any violation of a traffic law.

By the terms of C.R.S. '53, 13-4-26, all required accident reports are secret — "for the confidential use of the department" — "without prejudice to the individual so reporting," except that by 13-7-33 the essence of the report may be conveyed to any insurance carrier upon

request and payment of the information fee of twenty-five cents.

According to 13-7-7 the director of revenue is required to suspend the license of *every* operator and the registrations of *every* owner of an automobile "in any manner involved" in an accident unless there is a deposit of security referred to as "sufficient in the judgment of the director to satisfy any judgments for damages resulting from such accident as may be recovered against such operator or owner." This suspension is mandatory. It is not conditioned upon any report being made by the operator whose license is suspended. It is not conditioned upon a criminal trial and a finding of guilt. This suspension must be made within sixty days after the receipt of "*a* report" — any report, a true one, a false one, an unsworn one, the report of a bystander or the hearsay report of any kind by any person. A report such as is required by 13-7-6 (viz: by one involved in the accident) is *not* specified.

Analysis of C.R.S. '53, 13-7-7, reveals the following characteristics which counsel for defendant contends cannot be sustained.

1. A deposit of security is required regardless of the question of guilt of a violation of a traffic law, and without regard to the question of whether there was any negligence on the part of the person who is required to deposit the security.

2. The deposit is required after the accident and not before it, and operates only to facilitate collection of damages by the party who may thereafter be adjudged entitled thereto. No protection is offered the public with relation to future occurrences.

3. The deposit is required only because of the happening of an accident.

4. The deposit of security is required without any inquiry whatever concerning the liability of the person required to make it, and must be made in such sum as in the judgment of the director of revenue shall satisfy any

judgment for damages resulting from the accident, no standards are fixed for the exercise of his discretion, no evidence is taken, and no notice or hearing is afforded as to the amount or nature of the security to be required.

As shown by the stipulated facts, when a report of an accident, which identifies the parties involved, is made to the Motor Vehicle Division of the Department of Revenue, a notice is sent to them by mail. It is called a "Warning of Suspension" by which the parties are informed that if the recipient cannot prove he has insurance covering the accident, he must establish his financial responsibility to the other party to the accident by securing a release from him, or by depositing the amount of money fixed by the director of revenue. In default of which his license to drive a car will be summarily suspended.

Article II, Section 3 of the constitution provides that: "All persons have certain natural, essential and inalienable rights, among which may be reckoned the right * * * of acquiring, possessing and protecting property; * * * " A motor vehicle is property and a person cannot be deprived of property without due process of law. The term property, within the meaning of the due process clause, includes the right to make full use of the property which one has the inalienable right to acquire.

Every citizen has an inalienable right to make use of the public highways of the state; every citizen has full freedom to travel from place to place in the enjoyment of life and liberty. The limitations which may be placed upon this inherent right of the citizen must be based upon a proper exercise of the police power of the state in the protection of the public health, safety and welfare. Any unreasonable restraint upon the freedom of the individual to make use of the public highways cannot be sustained. Regulations imposed upon the right of the citizen to make use of the public highways must have a fair relationship to the protection of the public safety in order to be valid.

The regulation and control of traffic upon the public highways is a matter which has a definite relationship to the public safety, and no one questions the authority of the General Assembly to establish reasonable standards of fitness and competence to drive a motor vehicle which a citizen must possess before he drives a car upon the public highway. When a citizen meets the standards thus defined in a proper exercise of the police power, he has a right to continue in the full enjoyment of that right until by due process of law it has been established that by reason of abuse of the right or other just cause it is reasonably necessary in the interest of the public safety, to deprive him of the right to drive a motor vehicle on the highways. Such action cannot be taken without notice to the party affected and without an opportunity for him to be heard on the question of whether sufficient grounds exist to warrant a revocation of his right to drive a motor vehicle upon the highways of the state. The question of whether a constitutionally guaranteed property right can be denied for some justifiable reason, is essentially a judicial question, and under the doctrine of separation of powers of government it must remain a judicial question. In the instant case Nothaus was denied due process of law. The purported revocation of his license to drive was of no force or effect and was brought about under provisions of a statute which cannot be sustained.

The requirement of C.R.S. '53, 13-7-7, that the director of revenue, " * * * shall suspend the license of each operator and all registrations of each owner of a motor vehicle in any manner involved in such accident * * * " unless such persons deposit a sum "sufficient in the judgment of the director * * * " to pay any damage which may be awarded, or otherwise show ability to indemnify the other party to the accident against financial loss, has nothing whatever to do with the protection of the public safety, health, morals or welfare. It is a device designated and intended to bring about the posting

of security for the payment of a private obligation without the slightest indication that any legal obligation exists on the part of any person. The public gets no protection whatever from the deposit of such security. This is not the situation which we find in some states where the statutes require public liability insurance as a condition to be met *before a driver's license will issue.* Such statute protects the public. The statute before us is entirely different. In the matters to which we have particularly directed attention, C.R.S. '53, 13-7-7, is unconstitutional. On a matter so obviously basic and fundamental no additional citation of authority is required. We reach this conclusion notwithstanding the fact that other jurisdictions have seemingly overlooked basic constitutional guarantees which must be ignored in reaching an opposite conclusion.

For the reasons hereinabove stated the judgment of the trial court is affirmed.

MR. JUSTICE DOYLE and MR. JUSTICE MCWILLIAMS dissent.

MR. JUSTICE MCWILLIAMS dissenting:

Problems created by the financially irresponsible motorist are both obvious and real and are a proper matter for legislative concern and action. Various state legislatures have dealt with this matter in a variety of ways. A very few states have by statute decreed that until a would-be motorist furnishes evidence of his financial responsibility he should not even be granted a license to drive on the public highways, and this type of legislation has been sustained by various state courts as being a constitutionally acceptable exercise of the police power. See *Re Opinion of the Justices,* 81 N.H. 566, 129 A. 117, and 39 A.L.R. 1029. The Colorado legislature has not taken this drastic and controversial step, but has enacted a less stringent law (C.R.S. '53, 13-7-1, et seq.) which is here subjected to attack on the grounds that even it

offends the State and Federal Constitutions. The particular legislation enacted in Colorado has been sometimes referred to as of the "lock the barn door after the horse is stolen" type and operates in the following manner: A motorist is not required to show financial responsibility. *before* issuance of a license, but once evidence of his financial irresponsibility is brought to the attention of the licensing authorities following his involvement in an accident of specified proportion, then his license is suspended. One whose license is about to be suspended under this statute may avert the impending suspension by demonstrating his ability to respond to any judgment which might be entered against him as a result of the accident; or if his license be actually suspended, then the suspended licensee may regain his license if he, inter alia, posts sufficient security to demonstrate his ability to satisfy any judgment which may be entered against him as a result of such accident.

It may well be argued that this is an ineffective and illogical condition precedent to the averting, or the lifting, of a suspension order, but the wisdom of legislative action has theoretically never been a concern of the courts. If legislation requiring insurance or other security as a condition precedent to the right to operate a motor vehicle on the highway be valid, it would seem to follow that such compulsion may be limited to depend on contingencies, such as involvement in an accident. At the very least this type of legislation does have one salutory effect: if the statute be followed it makes certain that a motorist shall not become involved in two accidents and be financially irresponsible *in both!* In other words, having been involved in one accident, the motorist must demonstrate his ability to respond to possible judgments arising out of that accident before he is again licensed by a State to roam the highways in search of a second accident! In any event, whether this is the most effective legislation that could be enacted on the subject, is not our concern. Our problem is whether this

statute is unconstitutional. I find nothing in either the State or Federal Constitution which outlaws this particular type of legislation.

It is to be noted that the statute under attack is a part of the so-called uniform Safety Responsibility Law and that identical statutes have been enacted in many of the 50 states. Moreover, similar statutes have been attacked on constitutional grounds identical to those urged in the instant case in at least 6 other states, namely California, Iowa, Wisconsin, Kentucky, Nebraska and Texas, and in every instance have been held to be constitutional. See *Hadden v. Aitken,* 156 Neb. 215, 55 N.W. (2d) 620; *Escobedo v. State Dept. of Motor Vehicles,* 35 Cal. (2d) 870, 222 P. (2d) 1; *Doyle v. Kahl,* 242 Iowa 153, 46 N.W. (2d) 52; *Ballow v. Reeves* (Ky.), 238 S.W. (2d) 141; *Gillaspie v. Department of Public Safety,* 152 Tex. 459, 259 S.W. (2d) 177; and *State v. Stehlek,* 262 Wis. 642, 56 N.W. (2d) 514.

Also in 35 A.L.R. (2d) at page 1021 appears the following:

"Where a question has been raised as to the validity of statutes providing for suspension or revocation of the operator's license and registration certificate of any person involved in a motor vehicle accident which resulted in personal injury or property damage usually of a certain specified amount, unless such person deposits or posts security in an amount sufficient to satisfy any judgment which might be obtained against him as a result of the accident, the courts have *uniformly* held such acts valid." (Emphasis supplied.)

I, therefore, disassociate myself from the majority opinion and subscribe to the reasoning and result reached in each of the cases above cited and in so doing hold that C.R.S. '53, 13-7-7, is a constitutional effort on the part of the People, acting through their legislature, to deal with a vexing and serious problem.

MR. JUSTICE DOYLE concurs in this dissenting opinion.