## No. 24267.

JOHN A. LOVE, GOVERNOR OF THE STATE OF COLORADO; MARK HOGAN, LIEUTENANT GOVERNOR AND PRESIDENT OF THE SENATE OF THE STATE OF COLORADO; JOHN D. VANDERHOOF, SPEAKER OF THE HOUSE OF REPRESENTATIVES FOR THE STATE OF COLORADO; JOHN H. HECKERS, DIRECTOR OF REVENUE OF THE STATE OF COLORADO; WILLIAM A. CASSEL, MOTOR VEHICLE SUPERVISOR OF THE STATE OF COLORADO AND THE PEOPLE OF THE STATE OF COLORADO v. JOSEPH BELL, J. CHRIS DAVIDSON, GWEN LEDBETTER, BRUCE CERMAN, JAMES P. TAGARIS, CLINT ELLIS, AND THE COLORADO MOTORCYCLE ASSOCIATION, A COLORADO NON-PROFIT CORPORATION.

(465 P.2d 118)

Decided January 26, 1970.　　Rehearing denied March 9, 1970.

28

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, HAROLD L. NEUFELD, Assistant, for plaintiffs in error.

WARD, McKIBBEN, CONSTANTINE and PRED, FRANK C. McKIBBEN, for defendants in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

THE defendants in error (plaintiffs in the trial court and hereinafter designated as such) initiated a class action in the Denver District Court seeking a declaratory judgment concerning the constitutionality of C.R.S. 1963, 13-5-159, enacted by the 1968 General Assembly (commonly known as the Motorcycle Helmet Law), and seeking temporary and permanent relief from enforcement of that statute.

C.R.S. 1963, 13-5-159, which appears in Colorado Session Laws 146 (1968), provides in part:

"No person shall operate any motorcycle or motor-driven cycle on any public highway in this state unless such person and any passenger thereon is wearing securely fastened on his head a protective helmet designed to deflect blows, resist penetration, and spread the force of impact; * * *"

At the trial on the issues, the plaintiffs presented no evidence whatsoever. The defendants (the plaintiffs in error here) offered several documents containing statistics dealing with the results of the operation of motorcycles by drivers wearing helmets as compared to those with drivers not wearing helmets. No other evidence appears in the record. At the conclusion of the trial, the district court ruled that the intent of the Colorado Legislature in passing the legislation in question was to prevent motorcyclists from sustaining serious head injuries, and that the legislation was designed to protect only that certain class of individuals who operate or are passengers on motorcycles. For this reason, the trial judge ruled that the helmet statute did not relate to the health and welfare of the citizens of Colorado in general, and was, therefore, an unconstitutional exercise of the police power of the state. The court entered judgment ordering that the state be permanently enjoined from enforcing that portion of the statute relating to the requirement of wearing a helmet. The court upheld as constitutional the portion of the statute requiring operators of motorcycles

and passengers thereon to wear a face shield, goggles, or safety glasses.

The defendants contend that the district court was in error in adjudging the portion of C.R.S. 1963, 13-5-159 dealing with motorcycle helmets unconstitutional as an improper exercise of the police power of the state. We agree and reverse the judgment of the trial court on that issue.

The plaintiffs assign several grounds for cross-error. They allege that the trial judge was in error in holding (1) that the statute in question does not create an unconstitutional burden on interstate commerce; (2) that C.R.S. 1963, 13-5-159 is not discriminatory and does not constitute special legislation prohibited by the Colorado Constitution; (3) that the statute in question is not an unconstitutional burden on the freedom of movement and right to travel; and (4) that the portion of the statute dealing with goggles and protective glasses was a valid exercise of the police power of the state. We do not agree with the contentions of cross-error by the plaintiffs.

I.

At the outset, we point out that there are several well settled principles of law in Colorado and in other jurisdictions which serve to guide our decision in this case. First, there is a presumption that every statute is valid and constitutional, and the burden of clearly demonstrating the unconstitutionality of a statute is upon the party asserting its invalidity. Second, in order for a statute to be within the police power of the state, the provisions of the statute must be reasonably related to the public health, safety, and welfare. Whether or not the relationship is reasonable is a judicial question.

The plaintiffs argue that whenever a statute has the effect of depriving a certain class of persons of their individual constitutional freedoms, there must be a more substantial relationship between the restrictive provisions and the public health, safety, and welfare than that provided by the test of mere reasonableness. We do

not agree. While this Court has characterized an individual's right to use of the public highways of the state as an adjunct of the constitutional right to acquire, possess, and protect property, yet this Court has clearly held that such a right might be limited by a proper exercise of the police power of the state based on a reasonable relationship to the public health, safety, and welfare. *People v. Nothaus*, 147 Colo. 210, 363 P.2d 180.

█ In deciding that the statute in question bears no reasonable relation to the public health, safety, and welfare, the trial judge, in our opinion, failed to apply the above noted principles of constitutional law correctly to the facts of this case.

The trial judge concluded that the purpose of the statutory requirement that cyclists wear protective helmets was to prevent them from sustaining head injuries, and that such purpose was not within the police power of the state. To say that statutes which protect the individual from serious bodily harm or death are per se unconstitutional as not bearing a reasonable relationship to the public health, safety and welfare is to apply a most shallow concept to the doctrine of the police power of the state. Such a concept would require us to hold unconstitutional hunter safety laws, laws requiring life jackets in boats, laws requiring workers in certain occupations to wear protective devices, a result which we are not prepared to adopt in the name of the "right to be let alone."

It is, of course, part of romantic tradition that an individual ought to be able to lead an adventurous and swashbuckling existence without regard to his own safety and without interference from the King. But when that individual as a result of this free-wheeling activity seriously injures or kills himself, the ultimate result is unfortunately not always borne by him alone. Today our society humanely accepts as one of its functions the responsibility for relieving the economic suffering of its members. The evidence in the record here clearly shows

a higher frequency of serious head injury and death among motorcyclists not wearing helmets as compared with motorcyclists wearing helmets. Persons often become public charges because of their prolonged hospitalization for serious injury, and families are often required to be supported by public welfare as a result of the death of their breadwinner.

We would point out that this Court has held that the police power relates not merely to the public health and public physical safety, but also to public financial safety, and that laws may be passed within the police power to protect the public from financial loss. *Zeigler v. People*, 109 Colo. 252, 263, 124 P.2d 593, 598.

Moreover, we would point out that the record shows that injuries to motorcycle riders involved in accidents are more serious when they are not wearing helmets. It is a proper exercise of power for the legislature to protect members of the motoring public involved in accidents with motorcycle riders from being required to respond in damages more heavily than might be the case if the motorcycle driver and passenger were wearing helmets.

It is also clear that the helmet requirement, as well as the requirement for adequate protection for the eyes, bears a reasonable relationship to the health, safety, and welfare of the rest of the motoring public. As other courts which have considered similar legislation have noted, it is not unreasonable to contemplate that rocks picked up and thrown by the tires of automobiles or some overhead obstruction might strike the motorcyclist on the head causing him to lose control of his vehicle. Such loss of control presents a direct threat to the safety of those who use our public highways.

The hypothesis that such an accident might occur because of failure to wear an approved protective helmet has been upheld as reasonable by the highest courts of appeal in Louisiana, Massachusetts, North Carolina, North Dakota, Oregon, Rhode Island, Texas, Washington, and

34

Wisconsin, while only the Supreme Court of Illinois has held to the contrary. *Everhardt v. New Orleans,* 253 La. 285, 217 S.2d 400; *Commonwealth v. Howie,* 354 Mass. 769, 238 N.E.2d 373, *cert. denied* 393 U.S. 999, 89 S. Ct. 485, 21 L.Ed.2d 464; *State v. Anderson* 275 N.C. 168, 166 S.E.2d 49; *State v. Odegaard,* 165 N.W.2d 677 (N.D.); *State v. Fetterly,* 254 Ore. 47, 456 P.2d 996; *State v. Lombardi,* 104 R.I. 28, 241 A.2d 625; *Ex parte Smith,* 441 S.W.2d 544; *State v. Leitenen,* 459 P.2d 789; *Bisenius v. Karns,* 42 Wis.2d 42, 165 N.W.2d 377; *contra People v. Fries,* 42 Ill.2d 446, 250 N.E.2d 149.

The plaintiffs contend that they met their burden of overcoming the presumption of validity of the statute in question when, at the close of the hearing, neither side had been able to present evidence that a rock thrown by the wheel of a passing vehicle has ever been the cause of a motorcycle collision with another user of the public highway. However, in addition to a lack of evidence in the record that such accidents do happen, there is a total lack of evidence that such an accident cannot happen. The burden is on the defendants to prove that the statute is unreasonable. This they have failed to do. While the defendants may complain that such a burden is difficult to sustain, such complaint only reflects the broadness of the legislative power to legislate for the public health, safety, and welfare, and the reluctance of the courts to interpose their judgment for that of the legislature.

It is not unreasonable to contemplate that certain events might cause the cyclist, unprotected by a helmet, to lose control of his vehicle and cause injury to another on or near the public highway in the absence of proof that such an accident could not occur. We consider it significant that Exhibit 3 submitted to the district judge by the defendant indicates that of 10,800 motorcycle accidents studied from 1962-1966, 71.7 percent of the accidents involved collisions between the motorcycle and another motor vehicle.

There is some argument in the brief that helmets as

such do not prevent accidents, but rather interfere with the proper operation of the motorcycle. Suffice it to say that there is no evidence in the record to support this contention.

It is the decision of this Court that the record of the hearing before the trial judge is totally devoid of evidence which would overcome the presumption of validity with which the statute is cloaked, and that the helmet requirement represents a valid exercise of the police power of the state.

II.

The plaintiffs allege on assignment of cross-error that the helmet requirements of C.R.S. 1963, 13-5-159 places an unconstitutional burden on interstate commerce. We agree with the holding of the trial judge that no such burden exists.

The plaintiffs call our attention to *Bibb v. Navajo Freight Lines,* 359 U.S. 520, 79 S.C. 962, 3 L.Ed.2d 1003. However, a careful reading of that case defeats rather than supports defendants' contention. In the *Bibb* case the Supreme Court noted that the power of the state to regulate the use of its highways is broad and pervasive. That court made it clear that it would invalidate a safety measure enacted by a state only when ". . . the total effect of the law as a safety measure in reducing accidents and casualties is so slight or problematical as not to outweigh the national interest in keeping interstate commerce free from interferences which seriously impede it . . ." The Supreme Court stated that if there were only a question of cost imposed on a particular class to conform with the safety regulation, or if there were only a question whether the regulation properly related to the safety of the public, then the state statute would be upheld. The deciding factor of the *Bibb* case was the presence of conflicting state laws under which an interstate trucker would be forced to break the laws of one state as the cost of complying with the laws of another.

In the case before this Court, we have held that the

provisions of the statute requiring the motorcyclist to wear a protective helmet are related to the public safety. There is very little financial burden connected with complying with the statute. Most significantly, no state has a law making it illegal to wear a helmet while operating a motorcycle.

Instead of finding conflicting laws on motorcycle safety, we find that at least 41 states presently have legislation requiring motorcyclists to wear protective helmets. The federal Traffic and Motor Vehicle Safety Statute, 15 U.S.C.A. § 1381 *et seq.*, which was passed under the commerce power for the purpose of reducing traffic accidents, deaths, and injuries, is an indication that state statutes designed to reduce the death toll on the public highways are not contrary to any federal policy in interstate commerce.

### III.

The plaintiffs contend that there is no reason for separating motorcycles from other kinds of motor vehicles in enacting a motor vehicle safety statute such as this. Although a motorcycle is a motor vehicle, the legislature has occasionally treated it as a class apart from other motor vehicles. This was done in 1967 Perm. Supp. C.R.S. 1963, 13-4-14, which requires a special licensing for the operators of motorcycles. It is clear that the legislature is justified in treating motorcycles as a distinctive class when imposing a helmet requirement. The motorcycle driver is in a particularly exposed position without a windshield to protect him, and a two-wheeled vehicle is necessarily less stable than a motor vehicle with four wheels.

We cannot say as plaintiffs suggest, that the legislature should have imposed a requirement on motorcycle manufacturers to place windshields on the vehicles. This Court is not concerned with the wisdom of the particular method chosen by the legislature to avert the hazard in this case so long as the method chosen reasonably relates to the end to be achieved. The suggestion of

alternative methods does not go to the constitutional issues in this case.

## IV.

Finally, the plaintiffs argue that the helmet requirement is an unconstitutional burden on freedom of movement and the right to travel. It is sufficient to note that movement and travel are subject to regulation under the police power of the state, and that the effect of the statute in question is to regulate not prohibit movement.

That part of the judgment of the trial court which holds the helmet requirement of C.R.S. 1963, 13-5-159 unconstitutional is reversed. The remainder of the judgment is affirmed.