No. 24685.

THE PEOPLE OF THE STATE OF COLORADO *v.*
RICHARD OLIVER BROWN.
(485 P.2d 500)

Decided May 17, 1971.    Rehearing denied June 14, 1971.

Duke W. Dunbar, Attorney General, Harold Neu-feld, Assistant, Floyd Marks, District Attorney, Adams County, Stanley B. Bender, Chief Deputy, for plaintiff in error.

Carroll & Bradley, P.C., John S. Carroll, for defendant in error.

*En Banc.*

Mr. Justice Lee delivered the opinion of the Court.

This writ of error involves the constitutionality of the implied consent statute of the state of Colorado, 1967 Perm. Supp., C.R.S. 1963, 13-5-30(3) *et seq.* The district court of Adams County held this statute to be unconstitutional, and in doing so voided the Adams County Court conviction of defendant in error, Richard Oliver Brown, of driving a motor vehicle while under the influence of intoxicating liquor in violation of C.R.S. 1963, 13-5-30(1). We hold the implied consent law to be constitutional and therefore reverse the judgment of the district court.

Richard Oliver Brown was stopped at approximately 11:40 p.m. on January 15, 1968, by a Colorado state patrolman for failing to dim the headlamps of his automobile as he approached oncoming traffic. The officer,

upon talking to Brown, noticed a distinct odor of alcohol and, upon Brown's failure to satisfactorily perform certain sobriety tests, Brown was arrested and taken to the Adams County jail for further investigation. The evidence was in dispute as to whether Brown was advised of his rights as required by subsection 3(b) of the implied consent statute. However, Brown did consent in writing to submit to a blood test, when given his choice of submitting to a chemical test of his blood, breath or urine, for the purpose of determining the alcohol content of his blood. Blood was withdrawn from his body and the chemical analysis of the blood revealed an ethyl alcohol content of .202, which gave rise to the statutory presumption that Brown was under the influence of intoxicating liquor. C.R.S. 1963, 13-5-30(2)(d). Thereupon, Brown was charged in the Adams County Court with the offense of operating a motor vehicle while under the influence of intoxicating liquor.

Trial was to the court. Prior to trial a motion was made to suppress evidence of the results of the blood test. It was Brown's contention that for a variety of reasons the implied consent statute was unconstitutional. The motion to suppress was denied and the results of the blood test were admitted into evidence. At the conclusion of the trial, the county court made a general finding of guilty. Brown's motion for a new trial was denied and appeal was taken to the district court.

We note that the district court did not direct that the case be tried de novo before the district court, as it might have done pursuant to 1965 Perm. Supp. C.R.S. 1963, 37-15-10(2). The appeal was limited to review of the record on appeal and a consideration of the accompanying briefs and arguments. In spite of this method of review, the district court made a finding of fact on disputed evidence that Brown was not advised, either orally or in writing, of his rights as required by the implied consent statute. Such finding was contrary to the trial court's finding of advisement, implicit in

its general finding on the issue of the defendant's guilt. Although the district court in conducting a trial de novo might find differently than the county court on an issue of fact, nevertheless, where, as here, the district court is reviewing the record on appeal from the county court, it is bound by the findings of the trial court which have been determined on disputed evidence. The record in the trial court supports the general finding on the issue of compliance with procedural requirements, as well as on the issue of defendant's guilt of the substantive charge.

Turning now to the problem of the constitutional validity of the implied consent law, the district court held the statute to be unconstitutional for reasons which we now discuss.

We would first of all note the summary discussion in 88 A.L.R.2d 1064[c], where the author succinctly poses the complexity of the problem with which all states are faced concerning drunken drivers. As various implied consent statutes were enacted in an effort to cope with this problem, almost invariably each in turn has been attacked as unconstitutional for one or more reasons. In most instances, such statutes have been upheld as a valid exercise by the state under the police power of the right to regulate conduct which by its very nature directly affects the lives, health and general welfare of its citizens. Such has been the case in California, Iowa, Kansas, Missouri, Nebraska, New Jersey, New York, North Dakota, Ohio, Oregon, South Dakota, Vermont and Virginia. *See* Annots., 88 A.L.R.2d 1064 and A.L.R.2d Later Case Service.

The district court, in reversing Brown's county court conviction, ruled that the implied consent statute violated the due process guarantees of the United States Constitution and the Colorado constitution. We do not direct our attention to each particular constitutional provision which the district court felt was offended by the implied consent statute, as some of them have no rele-

vance to the problem at hand. An academic discussion, therefore, would be of no value in resolving this controversy. We do, however, find guidance in the briefs of the parties as to the fundamental constitutional questions considered by the court in arriving at its general finding of unconstitutionality.

I.

It is argued in support of the court's decision that there is an inalienable right to travel upon and use the highways of this state, which cannot, by reason of the Ninth Amendment to the United States Constitution and section 3 of article II of the Colorado constitution, be limited, circumscribed or denied. Cited as authority for this position is *People v. Nothaus*, 147 Colo. 210, 363 P.2d 180. On the contrary, this case clearly and explicitly recognizes that limitations may be placed upon an inalienable or inherent right based upon a proper exercise of the police power. This Court, in recognizing that the regulation and control of traffic upon the highways has a definite relationship to the public safety, expressly declared that the general assembly could establish standards of fitness and competence which a citizen must meet before he is entitled to exercise the right to drive upon the highways; and likewise, the general assembly may declare when by an abuse of that right or other just cause the right to drive may be curtailed and the license of a driver revoked. In other words, there is no constitutionally guaranteed illimitable right to drive upon highways. Mr. Justice Pringle, in *Love v. Bell,* 171 Colo. 27, 465 P.2d 118, disposes of this misconception in the following language:

"* * *While this Court has characterized an individual's right to use the public highways of this state as an adjunct of the constitutional right to acquire, possess, and protect property, yet this Court has clearly held that such a right might be limited by a proper exercise of the police power of the state based upon a reasonable

relationship to the public health, safety and welfare. *People v. Nothaus,* 147 Colo. 210, 363 P.2d 180."

II.

It was further contended in the district court and is argued here that the implied consent law does not meet the constitutional requirements of due process.

Without setting out the statute verbatim, we note its basic provisions were as follows: 1. A driver on a highway of this state shall be deemed to have given his consent to a chemical test of his blood, breath, or urine to determine the alcohol content of his blood, if charged with driving while under the influence of intoxicating liquor. 2. Preliminary to the chemical test, there must be an arrest of the driver based upon reasonable grounds to believe the driver was driving while under the influence of intoxicating liquor. 3. At the time of the request for the test, the driver must be advised by the officer, orally, and by written notice in both English and Spanish, of the driver's rights under the statute and the probable consequences of a refusal to submit to such a test. 4. The choice is given the driver as to whether there shall be a blood test; if he chooses not to have a blood test, then the officer shall determine whether a breath test or urine test shall be administered. 5. If the driver refuses to submit to the test requested, then the test shall not be given; and the arresting officer shall then file with the motor vehicle department a written report of the refusal, signed by the officer under oath, stating reasonable grounds for his belief that the driver was driving while under the influence of intoxicating liquor. 6. The department shall then issue a notice to the driver to show cause why his privilege to operate a motor vehicle should not be revoked at a hearing to be held. 7. If at the hearing reasonable grounds are not established by a preponderance of the evidence, the hearing shall terminate and no further administrative action shall be taken towards suspension of the license. 8. On the other hand, if reasonable grounds are established, the

burden shifts to the driver to show on competent medical advice that his physical condition was such that a test would have been inadvisable, or that the administration of the test would not have been in conformity with the rules and regulations of the state board of health, or in conformity with the statute; and in default thereof, the department shall suspend the driver's license for six months. 9. The driver upon petition may have judicial review of the department's decision in the district court under C.R.S. 1963, 13-4-27.

██ The district court held, first, that due process is denied by the statute for the reason that it compels a citizen to choose either his right to refuse to surrender evidence (blood) that would help convict him, or the right to retain his license to drive. The argument urges that if he submits to the blood test, the state will use the evidence to convict him and then suspend his license; whereas, if he refuses the blood test, the state will invoke the administrative procedures to revoke his license. This argument is premised upon the false assumption that the driver has an unfettered, inalienable right to drive upon the highways, which we have heretofore discussed. Additionally, *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, holds that there is no constitutional right to refuse to surrender blood for a chemical analysis to determine its alcohol content. In *People v. Sanchez,* 173 Colo. 188, 476 P.2d 980, we held the right to refuse a blood test under our implied consent law was a statutory right only and as such was subject to the sanction of possible suspension of one's driver's license. We find no merit in this argument.

██ Second, the district court held the implied consent statute violates due process because it creates a crime — that of refusing to consent to a blood test, punishable by forfeiture of the right to drive — and yet it denies the fundamental rights to which everyone is entitled when charged with a criminal offense: such as the right to trial by jury in a court rather than an administrative

tribunal; the right to be tried in the county or district where the offense was committed; the right to a presumption of innocence unless proven guilty beyond a reasonable doubt; the right of confrontation of witnesses; and other basic rights. All of these contentions have been considered and uniformly rejected in numerous cases where the proposition has been urged in connection with implied consent laws. *See State v. Starnes,* 21 Ohio St. 2d 38, 254 N.E.2d 675, and cases cited therein; Annots., 88 A.L.R.2d 1066 and 96 A.L.R.2d 612.

### III.

Another proposition urged upon the district court to reinforce its determination of unconstitutionality was that the implied consent law enforces warrantless and unreasonable searches and seizures. We consider this matter to have been put to rest by *Schmerber v. California, supra, People v. Sanchez, supra,* and *Compton v. People,* 166 Colo. 419, 444 P.2d 263. Although it has been determined that the taking of blood is an intrusion of the person and a search within the meaning of the constitutions, such is not an unreasonable search and seizure violative of the Fourth Amendment to the United States Constitution or section 7 of article II of the Colorado constitution.

### IV.

Another argument advanced to support the decision below is that the statute unconstitutionally sanctions an invasion of one's right of privacy, a position supported by the dissenting opinions in *Schmerber v. California, supra,* and *Breithaupt v. Abram,* 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448. We follow the law as announced by the majority in *Breithaupt, supra,* where Mr. Justice Clark, speaking for the Supreme Court of the United States, stated:

"As against the right of an individual that his person be held inviolable, even against so slight an intrusion as is involved in applying a blood test of the kind to which millions of Americans submit as a matter of course

nearly every day, must be set the interests of society in the scientific determination of intoxication, one of the great causes of the mortal hazards of the road. And the more so since the test likewise may establish innocence, thus affording protection against the treachery of judgment based on one or more of the senses. Furthermore, since our criminal law is to no small extent justified by the assumption of deterrence, the individual's right to immunity from such invasion of the body as is involved in a properly safeguarded blood test is far outweighed by the value of its deterrent effect due to public realization that the issue of driving while under the influence of alcohol can often by this method be taken out of the confusion of conflicting contentions."

## V.

█ Unconstitutionality is urged on the basis that the implied consent law permits violations of the privilege against self-incrimination. This Court has held in numerous decisions that the federal and state constitutional privilege against self-incrimination is concerned with and limited to testimonial compulsion, as distinguished from compulsion to exhibit physical characteristics. *Sandoval v. People,* 172 Colo. 383, 473 P.2d 722; *Vigil v. People,* 134 Colo. 126, 300 P.2d 545. In *Schmerber v. California, supra,* the court specifically ruled:

"* * * We hold that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends."

*See also State v. Kenderski,* 99 N.J. Super, 224, 239 A.2d 249; *Heer v. Department of Motor Vehicles,* 252 Or. 455, 450 P.2d 533.

## VI.

█ Although it is contended that the implied consent law is an impermissible burden on interstate commerce, and therefore unconstitutional, no authority is

cited in support of this proposition. We regard *Love v. Bell,* 171 Colo. 27, 465 P.2d 118, as decisive of this contention. There it was noted that the state power to regulate the use of its highways is broad and pervasive. The United States Supreme Court, in *Bibb v. Navajo Freight Lines,* 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003, clearly indicated a traffic safety statute would not be invalidated unless the "* * * total effect of the law as a safety measure is so slight or problematic as to not outweigh the national interest in keeping interstate commerce free from interferences which seriously impede it * * *." We regard the implied consent statute, which was enacted for the purpose of reducing accidents, deaths and injuries on our public highways, as a significant traffic regulation and no more burdensome as to interstate commerce than any other traffic regulation enacted for a similar public purpose, to which interstate commerce is and has been subjected in the several states.

## VII.

Lastly, it is urged that the statute is unconstitutional for the reason that the general assembly altered or amended the bill enacting the statute on its passage through the House and Senate so as to change its original purpose, contrary to the limitations of section 17 of article V of the Colorado constitution. Section 17 of article V provides, "No law shall be passed except by bill, and no bill shall be so altered or amended on its passage through either house as to change its original purpose."

The record shows that Senate Bill No. 32, as originally introduced, was entitled: "Concerning the operation of vehicles, and relating to driving while under the influence of intoxicating liquors or drugs, or while any person's ability to operate a vehicle is impaired by alcohol." In addition to amending and re-enacting existing provisions of C.R.S. 1963, 13-5-30, the bill created an additional misdemeanor, that of driving "* * * any vehicle in this state while such person's ability to operate a vehicle is impaired by the consumption of alcohol."

As finally adopted, Senate Bill No. 32 did not contain the foregoing provision but rather contained sections (3) (a) through (3) (i) concerning implied consent, and was entitled: "Concerning the operation of vehicles and relating to driving while under the influence of intoxicating liquors or drugs."

Our inquiry therefore is simply whether the deletion of the provision for the offense of driving while ability is impaired by alcohol, and the amendments made and adopted relating to implied consent during the course of legislative proceedings, amounted to an impermissible change in the purpose of the original bill as to violate section 17 of article V of the Colorado constitution. We hold that there was no such prohibited change in the purpose of the bill that would render its enactment a nullity. *In Re Amendments,* 19 Colo. 356, 35 P. 917, concerned the interpretation of section 17 of article V and indicated that the controlling reason for the limitation imposed was to prevent bills from being introduced dealing with a certain subject and afterwards being so amended as to relate to an *entirely different subject. See also Airy v. The People,* 21 Colo. 144, 40 P. 362; *People v. United Mine Workers,* 70 Colo. 269, 201 P. 54, 158 A.L.R. 421. The purpose of the bill as originally introduced, as supported by the record of the legislative proceedings, was to regulate the operation of motor vehicles and to deal with drivers who operate vehicles after having consumed alcohol or drugs. We can perceive no material difference in the purpose of the bill as finally adopted, merely because the legislature in its wisdom chose to change the means by which the purpose of the act was to be accomplished. The bill as finally adopted merely substituted one means for another in an effort to accomplish the same purpose. This in our view does not equate with an *entirely different subject.*

The judgment is reversed and the cause remanded to

the district court with directions to order the county court to reinstate its judgment of conviction.