The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Frederick William DUEMIG,
Defendant–Appellant.

No. 79SA150.

Supreme Court of Colorado.

Nov. 24, 1980.

Rehearing Denied Jan. 5, 1981.

Stuart A. Van Meveren, Dist. Atty., Eighth Judicial Dist., Donald E. Johnson, Jr., Chief Deputy Dist. Atty., Fort Collins, for plaintiff–appellee.

Joseph P. Jenkins, P. C., Estes Park, for defendant–appellant.

DUBOFSKY, Justice.

Frederick W. Duemig appeals his jury conviction for vehicular homicide[1] because the trial court allowed into evidence the results of a blood alcohol test performed on a sample of his blood obtained while he was in the Estes Park Hospital emergency room for treatment of injuries suffered in an automobile accident. The defendant had moved to suppress the results of the blood test, alleging that his blood sample was taken under circumstances which violated the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. We affirm the defendant's conviction.

---

1. The defendant was placed on probation for five years, was fined the sum of $2,000.00 (of which the sum of $1,500.00 was suspended) and was directed to pay the cost of supervision fees.

About 9:00 p. m. on June 26, 1977, the defendant was driving on Mary's Lake Road, south of Estes Park, when his 1960 Willys Jeep went off the right–hand side of the road and rolled down a short, steep embankment. The defendant was found near the jeep and taken to the hospital emergency room. As the jeep overturned, it crushed his three–year–old daughter, and she died at the scene of the accident.

Hospital personnel treated the defendant for scalp lacerations and a concussion. The defendant's behavior in the emergency room was erratic: he had difficulty lying still, and he was dazed, confused, and highly emotional after learning of his daughter's death. After the defendant's head injuries were treated, he left the emergency room, ostensibly to go to the X–ray room. Instead, he attempted to leave the hospital, and three law enforcement officers restrained him. A scuffle ensued. The police cuffed the defendant's hands behind his back and returned him to the emergency room.

The police seated the defendant on one of the treating tables and removed a handcuff from one arm to enable the medical technician to take a blood sample. The medical technician testified that the defendant did not want an injection, but when she explained that she was taking a blood sample, he stopped fighting, relaxed, and cooperated. The blood sample analysis determined that the defendant's blood contained 0.221 percent ethyl alcohol at the time the sample was withdrawn.

The defendant was charged by information with vehicular homicide under section 18–3–106, C.R.S. 1973 (now in 1978 Repl. Vol. 8), which provides:

"(1)(b) If a person operates or drives a motor vehicle, while under the influence of any drug or intoxicant, and such conduct is the proximate cause of the death of another, he commits vehicular homicide. . . .

"(2) In any prosecution for a violation of subsection (1) of this section, the amount of alcohol in the defendant's blood at the time of the commission of the alleged offense, or within a reasonable time thereafter, as shown by chemical analysis of the defendant's blood, urine, or breath, shall give rise to the following presumptions: . . . (c) if there was at such time 0.10 percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of alcohol."

At trial, the defendant maintained that his daughter's death was proximately caused by a defect in the jeep's steering. The defendant produced expert testimony and testimony from the prior owner of the jeep that the vehicle had a faulty steering mechanism which frequently caused the steering to catch, pulling the vehicle in one direction or the other. Although the defendant could not recall the accident or his treatment in the emergency room, he testified that he remembered his vehicle veering to the right.

On appeal, the defendant contends that the trial court improperly denied his motion to suppress the results of the blood test and his request for an instruction that the statutory presumption based on blood alcohol content could be overcome by other evidence that he was not under the influence of intoxicating liquor; that the vehicular homicide statute is unconstitutional because it does not include guidelines for the taking of a blood sample; and that the jury verdict was not supported by the evidence. We disagree.

Both at the hearing on his motion to suppress the results of the blood test and at trial, the defendant charged that his blood specimen was drawn forcibly and without his permission after he had suffered a head injury, while he was in a state of shock, and under circumstances which violated his constitutional privileges against self–incrimination, unreasonable search and seizure, and due process of law. The trial court ruled that the blood sample was taken in a hospital environment by a procedure which was reasonable and medically acceptable and denied the defendant's suppression motions. The record supports the court's ruling.

■ Because blood tests are not testimony of the defendant, the non–consensual withdrawal of a blood sample does not violate the defendant's Fifth Amendment protection against self–incrimination or *Colo. Const.* art. II, sec. 18. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *People v. Brown*, 174 Colo. 513, 485 P.2d 500 (1971). Nor does collection of a blood sample constitute an unreasonable search and seizure under the Fourth Amendment to the United States Constitution or *Colo.Const.* art. II, sec. 7. *Schmerber v. California, supra; People v. Brown, supra.*

■ The defendant acknowledges that a blood sample may be taken without his consent, but he argues that the circumstances of the taking here were violent and shocked the conscience within the meaning of *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).[2] The record of the venipuncture performed in this case does not disclose that the means used were so patently offensive as to shock the conscience. Although the defendant's conduct was periodically irrational, and the police officers used force to restrain the defendant and keep him in custody, the blood was not drawn forcibly, and the defendant appeared to understand and cooperate in the blood test.

The defendant's motion to suppress the results of the blood test was based upon the conditions surrounding collection of the blood sample. At the end of the suppression hearing, although the question of probable cause had not been raised by the defendant, the trial court found that there was probable cause to arrest the defendant and to compel the withdrawal of a blood sample. Not until his reply brief was filed in this appeal did the defendant argue that his blood sample was taken in violation of the standard requiring a "clear indication"

that a blood test will disclose relevant evidence. *People v. Williams*, 192 Colo. 249, 557 P.2d 399 (1976).

At the preliminary hearing, the chief investigating officer for the Highway Patrol testified that he ordered a blood sample because "it was believed that [the defendant] had been drinking and because of the seriousness of the accident." The defendant's motion to suppress focused on the circumstances existing in the emergency room when the blood sample was obtained, and all of the testimony at the hearing on the motion concerned what happened in the emergency room.

■ At trial, the defendant renewed his objection to the admission of the results of the blood test. A registered nurse who examined the defendant at the scene of the accident, a Larimer County deputy sheriff, an Estes Park police officer, and a Highway Patrol supervisory officer all testified that the defendant appeared intoxicated at the scene of the accident or in the emergency room of the hospital. The emergency room physician testified that he suspected possible intoxication,[3] but the medical technician who drew the blood sample said that the emergency room smelled of gasoline as a result of the accident, and that she did not smell any intoxicating beverages on the defendant's breath. The defendant testified that he drank two beers at a barbecue which preceded the accident.

Neither at trial nor in his motion for a new trial did the defendant dispute the existence of a clear indication that relevant evidence would be disclosed by the blood test. We have held time and again that we will not review contentions of error raised for the first time on appeal unless the error is fundamental. *Dorador v. Cronin*, Colo., 605 P.2d 53 (1980); *People v. Pickett*, 194 Colo. 178, 571 P.2d 1078 (1977); *Mathis v.*

---

2. In *Rochin*, an emetic solution was forced down the defendant's throat to induce him to regurgitate two capsules police had seen him swallow when they entered his room. The capsules, which contained morphine, were subsequently admitted as evidence in the defendant's trial on narcotics charges.

3. The doctor testified that the defendant's behavior symptoms were consistent with a head injury and with intoxication, but it was difficult to separate the signs of intoxication from the symptoms of head injury.

*People,* 167 Colo. 504, 448 P.2d 633 (1969). In any event, our review of the trial record discloses ample evidence that the police had a clear indication that relevant evidence of intoxication would be found when they ordered a sample of the defendant's blood. *People v. Williams, supra.*

■ The defendant objects to the jury instruction, based on section 18–3–106(2), C.R.S. 1973 (1978 Repl.Vol. 8), that a blood alcohol level of 0.10 per cent creates a presumption that the defendant is under the influence of alcohol. The defendant maintains that the jury should have been instructed also on the basis of section 18–3–106(3), C.R.S. 1973. (1978 Repl.Vol. 8), that the statutory presumptions "shall not be construed as limiting the introduction, or reception, or consideration of any other competent evidence bearing upon the question of whether or not the defendant was under the influence of intoxicating liquor." The defendant, however, did not tender an instruction to the court which included this provision of subsection (3). Moreover, had such an instruction been tendered, the trial court would not have been required to accept it. Subsection (3) pertains to the admissibility of evidence of intoxication other than a blood test, not evidentiary significance the jury should accord such evidence. Furthermore, the trial court instructed the jury that the defendant was presumed innocent, that the People had the burden to prove the defendant guilty beyond a reasonable doubt, and that a presumption remains "unless and until outweighed by evidence to the contrary." [4]

■ The defendant also maintains that the vehicular homicide statute violates the Fourteenth Amendment to the United States Constitution and *Colo.Const.* art. II, sec. 25 because the statute does not incorporate the procedural safeguards set out in the statute governing driving a motor vehicle while under the influence of intoxicat-

ing liquor, section 42–4–1202, C.R.S. 1973: specifically, the right to refuse a blood test and the procedures circumscribing blood sample withdrawal. Although the defendant's challenge is based on alleged due process infirmities, the gist of his claim is that the vehicular homicide statute denies him safeguards available to persons charged with drunk driving. Thus, his constitutional challenge may be characterized more accurately as a denial of equal protection. We rejected an identical equal protection challenge to the vehicular homicide statute in *People v. Myers,* Colo., 599 P.2d 891 (1979), where we held that because the death of another is an essential element of vehicular homicide, but not of driving under the influence, the offenses proscribe dissimilar conduct and a person prosecuted under the vehicular homicide statute is not situated similarly to a person charged with driving under the influence. The General Assembly may, therefore, legitimately decline to extend the privilege to refuse a blood test granted by section 42–4–1202, C.R.S. 1973, to persons accused of vehicular homicide. *People v. Myers, supra.*

■ Finally, the defendant questions the sufficiency of the evidence supporting his conviction. There is no question that the defendant was the driver of the vehicle at the time of the accident, and that an individual died because of the accident. The blood test result indicated sufficient alcohol to trigger the statutory presumption of driving under the influence. While the defendant presented testimony that faulty steering was the cause of the accident, the jury verdict was supported by evidence that the cause was the defendant's intoxication.

■ Where the sufficiency of the evidence to support a guilty verdict is challenged, we must view the testimony in the light most favorable to the prosecution. *People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973); *People v. Waggoner,* 196 Colo.

---

4. The defendant also requested *Colorado Jury Instruction (Civil)* 3.3: "Any finding of fact you make must be based on probabilities, not possibilities. They may not be based on surmise, speculation, or conjecture." The trial court

properly rejected this request because the court instructed the jury that it was the People's burden, beyond a reasonable doubt, to prove the defendant guilty.

578, 595 P.2d 217 (1979); *People v. Rivas*, 197 Colo. 131, 591 P.2d 83 (1979). If there is sufficient competent evidence establishing each of the essential elements of the crime charged, we may not overturn the jury's guilty verdict despite conflicts in the evidence. *People v. Jones*, 191 Colo. 110, 551 P.2d 706 (1976).

The judgment is affirmed.