STATE OF NEBRASKA, APPELLEE, v. RODNEY WILLIAMS, APPELLANT.

201 N. W. 2d 241

Filed October 13, 1972. No. 38423.

Thomas A. Wagoner, for appellant.

Clarence A. H. Meyer, Attorney General, and Harold Mosher, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

Defendant appeals from the denial of an evidentiary

hearing on his motion for post conviction relief. Defendant was convicted of motor vehicle homicide. He elected not to appeal and was sentenced to a term of 8 to 10 years in the Nebraska Penal and Correctional Complex. Defendant was represented by counsel of his own choice. The record of the trial is a part of the record herein. We affirm.

Defendant filed a form post conviction motion on which he had checked certain allegations which he wished to assert. Stripped to its essentials, the motion asserts: (1) The use of evidence obtained pursuant to an unlawful arrest; (2) introduction of a coerced confession; (3) introduction of a statement obtained in the absence of counsel; (4) use of testimony known to be perjured; (5) denial of counsel; (6) denial of the right to appeal; and (7) the excessiveness of the sentence.

Counsel appointed for the defendant filed an amended post conviction motion, alleging: (1) A violation of the Miranda rule; and (2) the unconstitutionality of the Nebraska Implied Consent Law. On the hearing on the motion, the trial court advised defendant's counsel that the trial record had been prepared and was available. The trial court then requested defendant's counsel to argue the points involved, and answered his argument from the trial record. No evidence was adduced other than the record of the trial.

We have repeatedly held the Post Conviction Act is not a substitute for an appeal. State v. Erving (1966), 180 Neb. 680, 144 N. W. 2d 424. It is only the violation or infringement of constitutional rights which is cognizable under our Post Conviction Act.

We find no merit to any of the claims defendant alleges constitute an infringement of his constitutional rights. He was represented by counsel of his own choosing. A review of the trial record indicates the adequacy of that representation. Defendant was found to be the driver of a car involved in a collision which resulted in nine fatalities. Subsequent to his conviction he filed a

written waiver of appeal, undoubtedly in an attempt to mitigate his sentence. The trial court examined defendant as to the voluntariness of the waiver of appeal, and accepted it.

The collision occurred between 11 and 11:30 p.m., August 8, 1970. About 3:30 a.m., August 9, the defendant was found at home in bed by a state trooper. He was taken to the hospital to talk to the assistant county attorney and another trooper, and to be checked for injuries. He had an odor of alcohol about him and when he arrived at the hospital the other trooper advised him of his rights and asked him for a specimen which he gave. After giving the specimen, he was permitted to return home. About 1:05 p.m. the next day, August 10, the defendant and his father were asked to visit the county attorney's office where the defendant was questioned by the deputy county attorney in the presence of his father. Before being questioned, his rights were fully explained to him, including his right to counsel. He initialed a waiver of right form after each right was explained. After the interview, the defendant was permitted to return home. A warrant for motor vehicle homicide was issued on August 11, 1970, and defendant was arrested and taken before the district judge. At that time he was represented by his trial counsel.

Defendant asserts the invalidity of the proceedings at which he gave the specimen and those before the county attorney the next day because he was not told at either time that he was to be charged with motor vehicle homicide. The specimen was taken 3 or 4 hours after the collision. The defendant knew that the specimen was being taken to determine the alcoholic content in his body fluid. Defendant knew that he had been in a major collision and if he were found to be the driver at the time of the collision he would be subject to criminal penalties. We have held that the voluntariness of blood or urine tests is not in a comparable class with confessions or incriminating statements. The consent to

the test is implied when the defendant operates a motor vehicle on a public road. The giving of the sample pursuant to the statute does not involve a question of involuntariness, want of due process, or self-incrimination. State v. Oleson (1966), 180 Neb. 546, 143 N. W. 2d 917.

The proceedings in the county attorney's office on August 10 were during an investigatory stage of the proceedings, and before the defendant had secured counsel although his father had attempted to reach the counsel who subsequently appeared. Defendant's rights were explained to him and he specifically waived each of them. He was advised of his right to counsel and agreed to give a statement in the absence of counsel. The statement given, however, was not prejudicial to the defendant. It could not be construed as a confession or as an admission against interest, but was entirely exculpatory in nature.

The trial record indicates no suppression of evidence. Defendant's counsel had no idea as to what the defendant was referring. The statement concerning the use of perjured testimony is clearly a conclusion. There is no indication of any kind who might have given perjured testimony or what that testimony might be.

The question of excessive sentence cannot be raised in a post conviction action.

The final point raised by the defendant in the amended motion is the constitutionality of Nebraska's Implied Consent Law. This matter is not specifically argued in the defendant's brief, and under our rules would be considered waived. However, answering the implications to be drawn from defendant's brief, the Nebraska Implied Consent Law is constitutional. In Prucha v. Department of Motor Vehicles (1961), 172 Neb. 415, 110 N. W. 2d 75, we said: "The essence of the 'implied consent law' is that by driving a motor vehicle on the public highway, the operator consents to the taking of a chemical test to determine the alcoholic content of his body fluid. By the act of driving his car, he has waived

his constitutional privilege of self-incrimination, which has always been considered to be a privilege of a solely personal nature which may be waived." See, also, Breithaupt v. Abram (1957), 352 U. S. 432, 77 S. Ct. 408, 1 L. Ed. 2d 448, in which police officers caused blood to be withdrawn from the driver of an automobile involved in an accident while the driver was unconscious. The United States Supreme Court affirmed the conviction resulting from the use of the test in evidence, holding that under such circumstances the withdrawal did not offend due process.

In the later case of Schmerber v. California (1966), 384 U. S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908, the defendant refused to give a blood test on the advice of counsel. At the direction of a police officer a blood sample was withdrawn from petitioner's body by a physician at the hospital. The United States Supreme Court affirmed the defendant's conviction. The court held that the Fifth Amendment privilege protects an accused only from being compelled to testify against himself or otherwise provide the state with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question did not involve compulsion to those ends.

The following quotation from Schmerber is particularly pertinent to both the issues raised in defendant's amended motion: "In Miranda v. Arizona, ante at 460, the Court said of the interests protected by the privilege: 'All these policies point to one overriding thought: the constitutional foundation underlying the privilege is the respect a government—state or federal—must accord to the dignity and integrity of its citizens. To maintain a "fair state-individual balance," to require the government "to shoulder the entire load" . . . to respect the inviolability of the human personality, our accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors,

rather than by the cruel, simple expedient of compelling it from his own mouth.' The withdrawal of blood necessarily involved puncturing the skin for extraction, and the percent by weight of alcohol in that blood, as established by chemical analysis, is evidence of criminal guilt. Compelled submission fails on one view to respect the 'inviolability of the human personality.' Moreover, since it enables the State to rely on evidence forced from the accused, the compulsion violates at least one meaning of the requirement that the State procure the evidence against an accused 'by its own independent labors.'

"As the passage in Miranda implicitly recognizes, however, the privilege has never been given the full scope which the values it helps to protect suggest. History and a long line of authorities in lower courts have consistently limited its protection to situations in which the State seeks to submerge those values by obtaining the evidence against an accused through 'the cruel, simple expedient of compelling it from his own mouth. . . . In sum, the privilege is fulfilled only when the person is guaranteed the right "to remain silent unless he chooses to speak in the unfettered exercise of his own will." ' Ibid. The leading case in this Court is Holt v. United States, 218 U. S. 245. There the question was whether evidence was admissible that the accused, prior to trial and over his protest, put on a blouse that fitted him. It was contended that compelling the accused to submit to the demand that he model the blouse violated the privilege. Mr. Justice Holmes, speaking for the Court, rejected the argument as 'based upon an extravagant extension of the Fifth Amendment,' and went on to say: '[T]he prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a

prisoner and compare his features with a photograph in proof.' 218 U. S., at 252-253.

"It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. Boyd v. United States, 116 U. S. 616. On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it."

We agree with the trial court that the motion and supplemental motion for post conviction review, when considered in the light of the record, show that the defendant is not entitled to an evidentiary hearing, and the order denying an evidentiary hearing and overruling the motion is affirmed.

AFFIRMED.