STATE OF NEBRASKA, APPELLEE, v. DONALD L. MANLEY, APPELLANT.

202 N. W. 2d 831

Filed December 15, 1972. No. 38517.

Douglas McArthur, for appellant.

Clarence A. H. Meyer, Attorney General, and James J. Duggan, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

Defendant, Donald L. Manley, was charged with second offense operation of a motor vehicle while under the influence of alcoholic liquor, and with refusal to submit to a chemical test. The jury found him guilty

on both counts. The defendant predicates this appeal on the unconstitutionality of section 39-727.03, R. S. Supp., 1971; the giving of instructions Nos. 4 and 6; and the failure to give defendant's requested instruction No. 1. We affirm.

Defendant was arrested September 20, 1971, in Gage County, Nebraska. The state trooper who made the arrest had observed defendant's vehicle weaving. He stopped it and, after observing the defendant's condition, made the arrest. Defendant was taken to the Gage County sheriff's office where the trooper read the Implied Consent Law to him, but omitted the first paragraph relating to a breath test because breath test equipment was not available. Defendant refused the trooper's request for a blood or urine test, but did offer to give a breath test.

Section 39-727.03, R. S. Supp., 1971, provides as follows: "Any person who operates or has in his actual physical control a motor vehicle upon a public highway in this state shall be deemed to have given his consent to submit to a chemical test of his blood, urine, or breath, for the purpose of determining the amount of alcoholic content in his body fluid. Any law enforcement officer who has been duly authorized to make arrests for violation of traffic laws of this state or ordinances of any city or village may require any such person to submit to a test of his breath for alcohol content if the officer has reasonable grounds to believe that such person has alcohol in his body, or has committed a moving traffic violation, or has been involved in a traffic accident. Any person who refuses to submit to such breath test or whose breath test results indicate an alcohol content of ten-hundredths of one per cent or more shall be placed under arrest. Any person so arrested may then, upon the direction of the law enforcement officer, be required to submit to a test of his blood, breath, or urine for a determination of the alcohol content. The law enforcement officer requiring such breath,

blood, or urine tests shall advise such persons of the consequences of refusing to submit to such tests. Any person who refuses to submit to a breath test required pursuant to this section shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not less than fifty dollars nor more than one hundred dollars. Any person who refuses to submit to a blood, breath, or urine test required pursuant to this section shall be guilty of a crime and, upon conviction thereof, shall be punished in the same manner as he would be if convicted for a violation of section 39-727."

This section must be read in connection with section 39-727.15, R. S. Supp., 1971, which provides as follows: "Any person arrested for any offense involving the operation of a motor vehicle while under the influence of alcoholic liquor shall be required to submit to a blood or urine test as provided in section 39-727.03 without the preliminary breath test if the arresting officer does not have available the necessary equipment for administering a breath test. Any person refusing to submit to the test required by this section shall be subject to the same penalties provided for violation of section 39-727.03."

In State v. Williams (1972), *ante* p. 127, 201 N. W. 2d 241, we determined that the Implied Consent Law as it existed previous to the 1971 amendment was constitutional. The 1971 amendment made the refusal to take the test a separate crime, whereas previously the penalty was merely the suspension of the driver's license of defendant. It is this fact which defendant contends makes the difference. We do not agree. The Implied Consent Law, as amended in 1971, is constitutional.

In Schmerber v. California (1966), 384 U. S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908, the United States Supreme Court held the Fifth Amendment privilege protects an accused from being compelled to testify against himself only as to evidence of a testimonial or communicative nature. The withdrawal of blood and the use of the

analysis in evidence does not involve compulsion within the Fifth Amendment.

See, also, State v. Meints (1972), *ante* p. 264, 202 N. W. 2d 202, where there were two separate prosecutions. We there permitted the State to introduce evidence of the defendant's refusal to give a body specimen, although he was being prosecuted in another action for that refusal.

Defendant further contends the statute is so vague and indefinite as to create doubt and uncertainty as to its meaning and is therefore violative of his right to due process. Defendant argues it is impossible to determine from the terms of section 39-727.03, R. S. Supp., 1971, what penalty will result from refusal to take the chemical test. He questions whether his punishment should be for the crime of first, second, or third offense. There is no merit to this contention. It is the duty of this court to give a statute an interpretation which meets constitutional requirements, if it can. State v. Simants (1968), 182 Neb. 491, 155 N. W. 2d 788. The language, "upon conviction thereof, shall be punished in the same manner as he would be if convicted for a violation of section 39-727," can only be read to mean that if it is a first offense the penalty shall be as provided for a first offense in that statute; if a second offense, the penalty shall be the one provided for a second offense in that statute; and likewise, if the conviction is for a third offense, it shall be the penalty provided for a third offense in section 39-727, R. S. Supp., 1971.

The trial court's instruction No. 4, so far as material herein, is as follows: "Any person arrested for any offense involving the operation of a motor vehicle while under the influence of alcoholic liquor, shall be required to submit to a blood or urine test for a determination of the alcoholic content thereof, without a preliminary breath test if the arresting officer does not have available the necessary equipment for administering a breath test."

The trial court's instruction No. 6, so far as material herein, is as follows: "The material elements which the State must prove by evidence beyond a reasonable doubt in order to convict the defendant of the crime charged in the second count are: 1. That on or about the 20th day of September, 1971, in Gage County, Nebraska, the defendant was arrested for an offense involving the operation of a motor vehicle while under the influence of alcoholic liquor; 2. That the arresting officer did not have available the necessary equipment for administering a breath test to determine alcoholic content; 3. That the arresting officer requested the defendant to submit to a blood or a urine test for a determination of alcoholic content thereof, and advised the defendant of the consequences of refusing to submit to such tests; and 4. That the defendant then refused to submit to such blood or urine test."

Defendant's proposed instruction No. 1, so far as material herein, provided: "Any person arrested for any offense involving the operation of a motor vehicle while under the influence of alcoholic liquor shall be required to submit to a blood, urine or breath test, for a determination of the alcoholic content. If equipment for testing a breath sample is not available then such person shall be required to submit to a blood or urine test. The officer requesting such tests shall advise such person of the consequences of refusing to submit to such tests. Any persons refusing to submit to such test as required above shall be deemed guilty of a crime and, upon conviction thereof, shall be punished as provided by law."

It is apparent that defendant's proposed instruction No. 1 was essentially covered in the court's instruction No. 4. Instruction No. 6 required the jury to find, before it could find defendant guilty, that the arresting officer did not have available the necessary equipment for administering a breath test to determine alcoholic

content. The instructions as a whole adequately presented the issues to the jury.

The fact that defendant attempted to give a conditional or qualified consent to the chemical tests does not meet the statutory requirement. The jury was required to find that breath testing equipment was not available. A qualified consent or refusal is considered to be a refusal. Rusho v. Johns (1970), 186 Neb. 131, 181 N. W. 2d 448.

Judgment affirmed.

AFFIRMED.

McCOWN, J., dissenting.

The majority opinion holds: "The Implied Consent Law, enacted in 1971, is constitutional." That holding compounds the obvious legislative confusion apparent in the 1971 and 1972 attempts to revise statutes dealing primarily with drunken driving. It places the stamp of judicial approval upon an involved and confused statutory structure.

The 1971 Legislature repealed the former provisions of the Implied Consent Law which provided for a civil revocation procedure before the Director of Motor Vehicles for refusal to submit to a chemical test, formerly sections 39-727.08 through 39-727.12, R. R. S. 1943. At the same time section 39-727.03, R. R. S. 1943, was converted into a criminal statute which made refusals two separate crimes, and provided that a refusal to submit to a blood, breath, or urine test was to be punished "in the same manner" as a violation of the drunken driving statute.

The defendant here was charged, convicted, and sentenced separately on counts for drunken driving and for refusing to submit to a chemical test. During the time the 1971 laws were in effect, there was no civil proceeding of any kind for revocation of a driver's license for refusal to submit to a chemical test. The repeal of those previous provisions also repealed the statutory requirement that if the test was refused, it

should not be given. In the absence of that provision, Schmerber v. California, 384 U. S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908, was obviously controlling. In 1971, the State could compel an arrested driver to submit to such a test whether he objected or not.

In this context, section 39-727.03, R. S. Supp., 1971, made it a crime to refuse to consent to a test which legally required no consent. The State could make the test whether the request was refused or not. Although the refusal was gratuitous and could be wholly disregarded by the State, nevertheless the statute provided that any person who refuses to submit "shall be punished in the same manner" as if convicted of drunken driving. That punishment included mandatory fines of $100 to $300; confinement ranging from less than 3 months in jail to 1 to 3 years in the Penal Complex; and included as an automatic provision, a revocation of driver's license for periods of 6 months to a year after discharge from confinement or payment of fine. Obviously, the penalty for refusing a test which could be given anyway had no relationship to the seriousness of the crime. Neither did it prevent the imposition of duplicate penalties for a drunken driving conviction.

The original purpose of the implied consent laws was to encourage persons suspected of driving under the influence of alcohol to submit to chemical tests by making a refusal result in the loss of a driver's license. The 1971 Nebraska statutes completely altered that situation and created a separate criminal offense, related to but entirely separate from the offense of drunken driving, and also removed the statutory proviso that if a test was refused, it should not be given. The statute also failed to specify whether a conviction for either a refusal or for drunken driving would eliminate the other; or whether refusal to take a chemical test should be treated as a lesser included offense in a prosecution for drunken driving; or whether charges could be filed separately.

The 1972 Legislature substantially reenacted the civil revocation statutes but new numbers were put on them and they are now sections 39-727.16 to 39-727.20, R. S. Supp., 1972. The Legislature also amended section 39-727.03, R. S. Supp., 1971, by making a more definite separation of the crime of refusing a preliminary breath test and the crime of refusing after arrest. It also provided that upon refusal the person not only "shall be punished in the same manner" as a violation of the drunken driving section but also "shall be subject to the administrative revocation procedures of the Director of Motor Vehicles." The reenactment of the old administrative revocation procedures also brought with it the revival of the statutory requirement that when a test was refused, "the test shall not be given."

The practical effect of the 1972 act was to revive the Implied Consent Law which had been in effect prior to 1971, and couple with it the two new crimes for refusal which were created in the 1971 law for the first time. Under the provisions of the 1972 law, for one occasion of suspected and actual drunken driving, a person may find himself convicted of three crimes: (1) The misdemeanor offense of refusing a breath test before arrest; (2) refusing a chemical test after arrest; and (3) the principal crime of drunken driving. In addition, for refusal after arrest he will have his driver's license revoked for 1 year by the Director of Motor Vehicles. Two of the three crimes also provide automatic license revocations as well as fines and possible jail or prison sentences. Under the current 1972 law, the punishments and penalties for a refusal to take a chemical test after arrest are greater than the punishments and penalties for drunken driving! The 1972 legislation serves to further complicate an already complicated and confused statutory structure, but those statutory provisions are not presently before us. It is nevertheless an appropriate time to call the attention of the Legislature to the problem.

It is extremely important that drunken drivers be taken off the highways. It is equally important that the removal be accomplished validly and justly.