[Civ. No. 27485. Fourth Dist., Div. Two. Apr. 1, 1982.]

THE PEOPLE, Plaintiff and Appellant, v.
LINDA KAREN RITCHIE, Defendant and Respondent.

456

COUNSEL

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, William W. Bedsworth and Kaz Makino, Deputy District Attorneys, for Plaintiff and Appellant.

Ronald Y. Butler, Public Defender, Frank Scanlon, Assistant Public Defender, William J. Kopeny and Edward W. Hall, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

**GARDNER, J.***—Charged with violation of Vehicle Code section 23105, subdivision (a), driving under the influence of a drug, defendant brought a motion to suppress evidence resulting from the extraction of a sample of her blood following her arrest. The municipal court granted the motion. The Appellate Department of the Orange County Superior Court reversed and certified the matter to this court as one involving an important question of law. ▪▪▪ The question presented on certification is whether a search warrant is required to permit a nonconsensual withdrawal of a blood sample, in a medically approved manner, as an incident to an arrest for violation of Vehicle Code section 23105, subdivision (a).

The facts are uncontradicted and derived from a settled statement. Defendant was arrested for a violation of Vehicle Code section 23105, subdivision (a), which prohibits driving a vehicle under the influence of drugs. The details of the stop and arrest are not part of the appeal record but instead it was settled that the arrest for driving under the influence of drugs was lawful. Thus, our resolution must start with it being a given fact that the officer was fully equipped with all necessary information to properly conclude defendant was under the influence of drugs.

The arresting officer advised defendant that in addition to a blood, breath or urine test, as required by Vehicle Code section 13353, he was, whether she consented or not, going to take a sample of her blood to provide evidence of its drug content.[1] The defendant had requested a breath test. However, the officer knew that such a test would not indicate the presence of any drugs in the defendant's system. Thereupon, at the officer's direction, a sample of defendant's blood was withdrawn in a medically approved manner. The defendant did not consent nor did the officer have a search warrant. The municipal court held that there was no showing of exigent circumstances in that there was no evidence that whatever particular drug substance was in the defendant's blood would quickly dissipate and thus the extraction of the blood was illegal. We do not agree and reverse the municipal court.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1]It was stipulated that Vehicle Code section 13353 does not apply.

■ The Supreme Court of the United States (*Schmerber* v. *California* (1966) 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826]) and the Supreme Court of this state (*People* v. *Superior Court* (*Hawkins*), (1972) 6 Cal.3d 757 [100 Cal.Rptr. 281, 493 P.2d 1145]) have held that a blood sample may be taken without consent to determine intoxication due to the consumption of alcohol provided (1) the removal is done in a reasonable medically approved manner, (2) it is incident to the defendant's arrest, and (3) it is based on a reasonable belief that the defendant is under the influence.[2] The mere fact of a lawful arrest is not sufficient. Special factors must exist which make the taking of the sample reasonable. In intoxication by alcohol, the special factor that the percentage of alcohol in the blood begins to diminish shortly after its consumption triggers the warrantless intrusion into the body. In *Schmerber*, the Supreme Court recognized that the percentage of alcohol begins to diminish shortly after consumption as the body functions to eliminate it from the system and treated this as an exigent circumstance, the destruction of evidence, justifying the warrantless intrusion subject, of course, to the factors mentioned above.

The municipal court apparently felt that a distinction exists between the ingestion of alcohol and the ingestion of drugs. We detect no appreciable difference. It is a matter of common knowledge that from the moment of ingestion the body begins to eliminate drugs from the system. While the rate of dissipation may depend on many factors, one, of course, being the type of drug involved,[3] nevertheless, the amount of drug in the blood stream does diminish with the passage of time. The alternative is a lifetime high which may be a desirable result but is hardly consistent with elementary physiology.

It is true that in cases involving the swallowing of objects which will eventually pass through the bodily processes of digestion and elimination (balloons of heroin, rings, etc.) (see *People* v. *Bracamonte* (1975) 15 Cal.3d 394 [124 Cal.Rptr. 528, 540 P.2d 624]) forced regurgitation is forbidden since the authorities have only to wait with such patience as they can muster for the body to eliminate the substance via the intestinal tract. However, drugs in the blood stream, like alcohol, dissipate.

---

[2]Consent and exigent circumstances (other than diminution of drugs in the blood system) (*Carrington* v. *Superior Court* (1973) 31 Cal.App.3d 635 [107 Cal.Rptr. 546]) are not herein involved.

[3]According to *Sallas* v. *Municipal Court* (1978) 86 Cal.App.3d 737 [150 Cal.Rptr. 543], there are about 120 controlled drugs plus their isomers, esters, ethers, salts and salts of isomers.

We can find no basis for a requirement that law enforcement officials ascertain the nature of the drug ingested in order to determine just how fast it will dissipate. A contrary rule would necessitate that in cases such as this not only would the officer have to identify the drug but some expert testimony would have to be presented as to the rate of dissipation of that particular drug. This appears to be completely unreasonable and places an unnecessary burden on the prosecution. A contrary rule would result not only in a double standard, one for the person arrested for being under the influence of drugs and one for the person arrested for being under the influence of alcohol but would also result in the completely ridiculous situation of a person being arrested for being under the combined influence of both of having the results of the blood test admissible as to the alcohol but not as to the drug. While law may reach some peculiar results, it ought never be silly.

The Supreme Court of this state in adopting the exclusionary rule in *People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513], warned against "needless refinements and distinctions." Making a distinction between the ingestion of alcohol and that of drugs is a needless refinement and distinction.

The order of the municipal court granting defendant's suppression motion is reversed.

Kaufman, Acting P. J., and McDaniel, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 7, 1982. Bird, C. J., and Newman, J., were of the opinion that the petition should be granted.