STATE of Alaska, Petitioner,

v.

Laura A. BLANK, Respondent.

No. S–9721.

Supreme Court of Alaska.

April 30, 2004.

---

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Petitioner.

Christine S. Schleuss, Anchorage, for Respondent.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

A state trooper conducted a warrantless search of a driver's breath following a fatal accident. Was this potentially a valid exi-gent circumstances search even though the driver was not arrested substantially contemporaneously with the search? We first hold that an arrest is not a prerequisite to a valid exigent circumstances warrantless breath test. Next, we construe AS 28.35.031(g) as satisfying minimal constitutional requirements for warrantless searches when exigent circumstances exist. We also hold that the trooper had probable cause to arrest the driver for negligent homicide or manslaughter and probable cause to believe that a breath test would produce relevant evidence of those crimes. But because neither the superior court nor the court of appeals reached the issue whether exigent circumstances justified this search, we remand so the superior court can make this determination.

## II. FACTS AND PROCEEDINGS

A vehicle driven by Laura Blank fatally struck Pennye McDowell as she walked with a companion on a residential street near Palmer on September 26, 1994.[1] Blank and her two daughters were driving home from her friend's house. Blank did not stop.[2]

Blank's husband, Greg Blank, arrived at the accident scene while Alaska state troopers were investigating.[3] Greg Blank told Trooper Bill Tyler that his wife might have been involved in the accident.[4] Trooper Tyler and two other officers followed Greg back to the Blank residence.[5] There, Trooper Tyler interviewed Laura Blank in his patrol car.[6] Trooper Tyler did not place Blank under arrest.[7]

Blank told Trooper Tyler during the interview that she had consumed two beers at her friend's house before driving home.[8] Without attempting to obtain a search warrant, Trooper Tyler asked Blank to take a prelimi-

1. *Blank v. State,* 3 P.3d 359, 362 (Alaska App. 2000). We take many of the facts from the opinion of the court of appeals.

2. *Id.*

3. *Id.*

4. *Id.*

5. *Id.*

6. *Id.*

7. *Id.*

8. *Id.*

nary breath test.[9] Blank submitted to the test. The test registered a blood-alcohol content of .082%.[10] Blank also agreed to accompany Trooper Tyler to a hospital for a blood test, but she refused consent at the hospital.[11] No blood sample was drawn.

The grand jury indicted Blank in December 1994 for manslaughter [12] and leaving the scene of an accident.[13] The superior court denied Blank's motion to suppress evidence of the preliminary breath test. The superior court held that the test was authorized by AS 28.35.031(g), which provides that "a law enforcement officer who has reasonable grounds to believe that [a] person was operating or driving a motor vehicle in this state that was involved in an accident causing death or serious physical injury to another person" may administer blood or breath alcohol tests of the person based on the individual's implied consent. Following a mistrial, a jury convicted Blank on both counts of the indictment.[14]

Blank appealed, and the court of appeals reversed.[15] It concluded that AS 28.35.031(g) violates the search and seizure provisions of the federal and state constitutions because "the statute allows the officer to administer the test(s) without any individ-

**9.** Blank never verbally acknowledged this request, and it is not clear that she actually heard it, but she submitted to the test without hesitation or complaint. The superior court held that Blank's acquiescence to Trooper Tyler's request did not satisfy the consent exception to the warrant requirement because she did not make "a knowing, voluntary, and intelligent choice to submit to the test." The court of appeals did not address this issue, and the state did not seek review of the superior court's ruling before this court. Therefore, we assume that the consent exception is inapplicable in this case.

**10.** *Blank,* 3 P.3d at 362.

**11.** *Id.*

**12.** AS 11.41.120(a).

**13.** AS 28.35.060(a).

**14.** *Blank,* 3 P.3d at 362.

**15.** *Id.* at 371.

**16.** *Id.* at 366, 368. The court of appeals noted that the United States Supreme Court has authorized some types of searches even without individualized suspicion where the search served

ualized suspicion that the driver was impaired, whether by alcohol or drugs, or even any evidence that the driver or operator caused the accident." [16] The court of appeals also ruled that the preliminary breath test did not fall within the exigent circumstances exception to the warrant requirement, because Blank was not placed under arrest, as required by *Layland v. State,*[17] before or substantially contemporaneously with the search.[18]

The State of Alaska filed a petition for hearing with this court, and Blank filed a cross-petition. We denied Blank's cross-petition, but granted the state's petition as to three issues: (1) does AS 28.35.031(g) authorize a reasonable search? (2) can AS 28.35.031(g) be given a saving construction? and (3) was the preliminary breath test administered to Blank justified under the exigent circumstances exception to the warrant requirement?

## III. DISCUSSION

 We hold that Trooper Tyler's warrantless search of Blank's breath was constitutional if it was a valid exigent circumstances search.[19]

"special needs" beyond ordinary law enforcement. *Id.* (citing *Skinner v. Ry. Labor Executives' Ass'n,* 489 U.S. 602, 619, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989)). The court of appeals held this doctrine inapplicable because subsection .031(g) does not address "special societal needs other than normal law enforcement." *Id.* at 367–68. The state initially contested this conclusion in its opening brief to this court, but abandoned this tack in its reply brief, admitting that the primary purpose of the searches authorized by AS 28.35.031(g) is to generate evidence for criminal prosecution. *See Ferguson v. City of Charleston,* 532 U.S. 67, 83, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001) (holding that special needs doctrine is inapplicable to warrantless drug testing of pregnant women because "immediate objective of the searches was to generate evidence for law enforcement purposes").

**17.** 535 P.2d 1043, 1047–49 (Alaska 1975).

**18.** *Blank,* 3 P.3d at 370–71.

**19.** A breath test is a search. *Skinner v. Ry. Labor Executives' Ass'n,* 489 U.S. 602, 616–17, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (breath tests are searches under Fourth Amendment); *Burnett*

First, we agree in Part III.A with the state that *Layland* should be overruled insofar as it required a substantially contemporaneous arrest to justify an exigent circumstances search of a driver's blood alcohol content.

Having overruled *Layland*, we consider in Part III.B whether AS 28.35.031(g), as applied to Blank's warrantless search, should be read to incorporate the constitutional requirements for a valid exigent circumstances search. We have frequently held that this statute provides the exclusive authority for administering a police-initiated chemical sobriety test to obtain evidence of acts allegedly committed by a driver while operating a motor vehicle.[20] In other words, a search must satisfy the statute to be valid. We have consequently held that evidence obtained from an unauthorized chemical test should be suppressed, even if the test was otherwise constitutional.[21] But that does not mean that a search that satisfies the statute also automatically satisfies the constitution. Accordingly, we must consider whether AS 28.35.031(g) may be given a narrowing construction that avoids constitutional problems when a breath test is administered without a search warrant.

Finally, in Part III.C, we remand so the superior court can determine whether exigent circumstances justified the warrantless search of Blank's breath.

## A. *Schmerber v. California* Does Not Require a Contemporaneous Arrest.

■ In *Layland*, a state trooper obtained a blood sample without obtaining a search warrant or the driver's consent following an accident in which another person was killed.[22] Although the trooper had probable cause to arrest the driver for negligent homicide at the time of the search, he did not.[23] We considered and rejected four exceptions to the warrant requirement that might have justified the warrantless search.[24] Regarding the exigent circumstances exception, we interpreted the United States Supreme Court's decision in *Schmerber v. California* to permit warrantless blood draws only in connection with a substantially contemporaneous arrest.[25]

The Court held in *Schmerber* that the warrantless taking of blood from a driver arrested for driving while intoxicated was reasonable because (1) the officer had probable cause to arrest and to believe that a blood alcohol test would produce evidence of the crime; (2) the officer might reasonably have believed he was confronted with an emergency in which the delay necessary to obtain a warrant might result in the destruction of evidence; and (3) the blood draw was performed in a reasonable manner.[26] The *Schmerber* Court concluded that "the attempt to secure evidence of blood-alcohol content in this case was an appropriate *incident to petitioner's arrest.*"[27] In *Layland*, we interpreted *Schmerber* to require a substantially contemporaneous arrest in addition to the three requirements *Schmerber* explicitly discussed.

The court of appeals held that Trooper Tyler's search of Blank's breath could not be

---

*v. City of Anchorage*, 806 F.2d 1447, 1449 (9th Cir.1986) (same); *Leslie v. State*, 711 P.2d 575, 576 (Alaska App.1986) (same). Warrantless searches are per se unreasonable unless they fall within one of the "well-delineated exceptions" to the warrant requirement. *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Lupro v. State*, 603 P.2d 468, 476 (Alaska 1979).

Whether a particular search falls within an exception to the warrant requirement is a question of law, which we review de novo. *State v. Page*, 911 P.2d 513, 515–16 (Alaska App.1996).

**20.** *Sosa v. State*, 4 P.3d 951, 953–54 (Alaska 2000); *Pena v. State*, 684 P.2d 864, 867 (Alaska 1984); *Anchorage v. Geber*, 592 P.2d 1187, 1192 (Alaska 1979). We have thus held that evidence obtained from an unauthorized chemical test should be suppressed, even if the test was other-

wise constitutional. *Geber*, 592 P.2d at 1192 & n. 8.

**21.** *Geber*, 592 P.2d at 1192.

**22.** 535 P.2d at 1044.

**23.** *Id.* at 1044, 1047 & n. 22.

**24.** *Id.* at 1046–50.

**25.** *Id.* at 1045, 1048–49 (interpreting *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)).

**26.** 384 U.S. at 768–72, 86 S.Ct. 1826.

**27.** *Id.* at 771, 86 S.Ct. 1826 (emphasis added).

justified under the exigent circumstances exception because Blank was not placed under arrest before or substantially contemporaneously with the search.[28] Although the court of appeals followed *Layland,* as it was obliged to do, it cited and discussed cases and treatises rejecting the view that *Schmerber* requires a contemporaneous arrest to justify an exigent circumstances search of a driver's blood-alcohol content.[29]

It is not necessary for us to recapitulate the court of appeals's helpful presentation of these authorities. *Layland* attempted to predict the direction of federal law following *Schmerber,* but we are convinced that subsequent cases have proved our prediction to have been inaccurate. It is sufficient to quote *United States v. Chapel,* in which the United States Court of Appeals for the Ninth Circuit sitting en banc reversed its own earlier precedent interpreting *Schmerber* to impose an arrest requirement:

> We now know from the Supreme Court's reasoning in a case decided after *Harvey* that the seizure of blood in *Schmerber* "fell within the exigent circumstances exception to the warrant requirement." *Winston v. Lee,* 470 U.S. 753, 759, [105 S.Ct. 1611, 84 L.Ed.2d 662] (1985). Seizures of evidence based on exigent circumstances do not, of course have to be accompanied by an arrest. . . . Accordingly, an arrest is not essential to support the intrusion in the absence of a warrant, so long as the three explicit *Schmerber* requirements are met. Thus, the interpretation of *Schmerber* that formed the basis of our decision in *Harvey,* though plausible at the time, is no longer sustainable in light of *Winston.* *Harvey's* arrest requirement therefore cannot stand.[30]

We agree with *Chapel's* reasoning, and overrule *Layland* to the extent it required an arrest to justify an exigent circumstances search of a driver's blood alcohol content. Trooper Tyler's search of Blank's breath is

therefore constitutional if the three explicit *Schmerber* requirements are satisfied: probable cause, exigent circumstances, and reasonable procedures.

## B. We Read AS 28.35.031(g), as It Applies to Laura Blank, To Incorporate the Exigent Circumstances Standard for Warrantless Searches.

The superior court upheld the search of Laura Blank's breath under AS 28.35.031(g). This statute authorizes "a law enforcement officer who has reasonable grounds to believe that [a] person was operating or driving a motor vehicle in this state that was involved in an accident causing death or serious physical injury to another person" to administer blood or breath alcohol tests to the person based on the individual's implied consent. The court of appeals held that AS 28.35.031(g) violates the search and seizure provisions of the federal and Alaska constitutions because it "allows the officer to administer the test(s) without any individualized suspicion that the driver was impaired." [31] Noting that it could construe a statute to avoid constitutional concerns, the court of appeals declined to read subsection .031(g) to require that police have probable cause to believe the tested driver has committed a crime because the court appropriately recognized that such a requirement would not satisfy *Layland.*[32]

The state argues that we should read *Schmerber's* probable cause requirements into the statute to avoid any constitutional infirmity. Because we have overruled *Layland,* it no longer constrains a court considering whether subsection .031(g) can be given a narrowing construction that avoids constitutional problems.

Whether to apply a narrowing construction to avoid holding a statute unconstitutional is a question of law to which we bring our independent judgment. For sever-

**28.** *Blank,* 3 P.3d at 368–70.

**29.** *Id.* at 369–70.

**30.** 55 F.3d 1416, 1418–19 (9th Cir.1995) (overruling *United States v. Harvey,* 701 F.2d 800, 803–04 (9th Cir.1983)).

**31.** *Blank,* 3 P.3d at 366, 368.

**32.** *Id.* at 368–69.

al reasons, we choose to decide this issue, rather than remand it to the court of appeals, notwithstanding the expertise that court brings to the field of criminal procedure and law: the issue raises a pure question of law; if we were to remand the issue, no matter what the result below, one of the parties might feel compelled to ask us to review the decision; it is more expeditious for us to reach this issue now; further, a ruling on this issue now will guide the parties and the superior court in considering the exigency issue on remand and may advance the ultimate termination of the case.

■ This court will narrowly construe statutes in order to avoid constitutional infirmity where that can be done without doing violence to the legislature's intent.[33]

The text of AS 28.35.031(g) is neither explicitly nor implicitly inconsistent with the narrowing construction we give it here.[34] The statute implicitly contemplates warrantless searches under circumstances that may be inherently exigent and that may consequently render warrantless searches constitutional. We therefore construe subsection .031(g) to be constitutional in context of warrantless searches for breath or blood in accident cases involving death or serious physical injury when probable cause to search exists and the search falls within a recognized exception to the warrant requirement. So construed, subsection .031(g) has the effect of specifying that such tests are authorized under Alaska's implied consent statute and therefore comply with the rule set out in *Geber*,[35] which might otherwise exclude the test results as unauthorized, even if they were constitutionally obtained.

■ In context of the facts presented in this case, we choose to construe subsection .031(g) to incorporate, in addition to the statutory requirements, the exigent circumstances requirements discussed in *Schmerber*. Thus, if exigent circumstances were present in this case, the warrantless search was valid.[36]

## C. We Remand to the Superior Court To Determine Whether Exigent Circumstances Justified the Search.

■ Two of the three requirements for an exigent circumstances search—probable cause and reasonable procedures—are clearly met here. Before interviewing Blank, Trooper Tyler investigated the accident scene and learned that McDowell was dead, that Blank may have caused the accident, and that Blank had left the scene.[37] Accordingly, Trooper Tyler had probable cause[38] to believe that Blank had committed two crimes: felony hit and run[39] and either negli-

33. *State v. Alex*, 646 P.2d 203, 207–08 (Alaska 1982) (citing *Bonjour v. Bonjour*, 592 P.2d 1233, 1237–38 (Alaska 1979)). In *State v. Alex* we noted that only a reasonable construction may be placed on a statute in this manner, because giving the statute an unintended meaning "would be stepping over the line of interpretation and engaging in legislation." *Id.* (citing *Gottschalk v. State*, 575 P.2d 289, 296 (Alaska 1978)).

34. AS 28.35.031(g) provides:

A person who operates or drives a motor vehicle in this state shall be considered to have given consent to a chemical test or tests of the person's breath and blood for the purpose of determining the alcoholic content of the person's breath and blood and shall be considered to have given consent to a chemical test or tests of the person's blood and urine for the purpose of determining the presence of controlled substances in the person's blood and urine if the person is involved in a motor vehicle accident that causes death or serious physical injury to another person. The test or

tests may be administered at the direction of a law enforcement officer who has probable cause to believe that the person was operating or driving a motor vehicle in this state that was involved in an accident causing death or serious physical injury to another person.

35. 592 P.2d at 1192 & n. 8.

36. We consider only the exigent circumstances exception here because Blank was not arrested and there is no reason to consider in this case whether some other exception might theoretically apply.

37. *Blank*, 3 P.3d at 362.

38. Probable cause to arrest exists if the facts and circumstances known to the officer would warrant a prudent person in believing that the defendant had committed an offense. *Schmid v. State*, 615 P.2d 565, 574 (Alaska 1980).

39. AS 28.35.060(a).

gent homicide or manslaughter.[40]

■ Trooper Tyler also had probable cause to believe that a search of Blank's breath would produce relevant evidence of these crimes. Blank told him that she consumed two beers at a friend's house shortly before the accident, and Trooper Tyler testified that "the smell of alcohol became quite apparent" once he and Blank were sitting in the patrol car. Trooper Tyler also had substantial indirect evidence of Blank's possible impairment based on the circumstances of the accident. He learned that the pedestrians were walking on the edge and shoulder of a straight section of road at the time of the accident, that Blank saw the pedestrians in time to avoid them but inexplicably failed to do so, and that Blank's car and the driving conditions were not the cause of the accident. Furthermore, Blank told Trooper Tyler that she did not stop at the scene because she did not even realize that she had hit someone. She initially thought one of the pedestrians had thrown a rock at the car, and chose to keep driving rather than confront them because they were "just kids."

Thus, Trooper Tyler had evidence that Blank was responsible for an accident resulting in a fatality, that the accident was likely caused by Blank's inattention, poor judgment, misperception, poor coordination, or some combination of these, and that Blank smelled of alcohol and admitted to drinking shortly before the accident. We conclude that this evidence was more than sufficient

under *Schmerber* to support probable cause to search Blank's breath.[41]

■ Another requirement of *Schmerber*—that a reasonable method of collecting the blood sample be used—is not at issue here. The procedure used in this case was minimally intrusive, involving a breath sample rather than a blood draw. Blank has not challenged Trooper Tyler's qualifications to obtain her breath sample and has alleged no impropriety in the manner in which he conducted her test.[42]

■ Regarding *Schmerber's* exigent circumstances requirement, we decline to decide this issue for the first time on appeal. *Schmerber* held that the exigencies posed by serious accidents in combination with the rapid dissipation of alcohol in the bloodstream justified the officer's failure to obtain a warrant in that case:

> The officer in the present case ... might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened "the destruction of evidence." We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there

**40.** AS 11.41.120 (defining manslaughter to include "recklessly caus[ing] the death of another person"); AS 11.41.130 ("A person commits the crime of criminally negligent homicide if, with criminal negligence, the person causes the death of another person.").

**41.** Numerous cases from other jurisdictions support this conclusion. *See DeVaney v. State*, 259 Ind. 483, 288 N.E.2d 732, 735 (1972) (holding that involvement in serious auto accident and odor of liquor on breath sufficient to establish probable cause to extract blood sample under *Schmerber*); *State v. Oevering*, 268 N.W.2d 68, 74 (Minn.1978) (holding that officer had probable cause to extract blood where officer knew traffic fatality had occurred, witness identified driver, and officer smelled alcohol on driver's breath); *Turner v. State*, 726 So.2d 117, 126–27 (Miss.1998) (concluding that officer had probable

cause to order blood test based on his knowledge that driver had collided with rear end of another vehicle stopped at traffic signal, occupant of other vehicle was killed in accident, and officer believed driver was intoxicated); *Commonwealth v. Simon*, 440 Pa.Super. 428, 655 A.2d 1024, 1027 (1995) (noting that superior court "has repeatedly upheld probable cause to conduct a blood alcohol test ... where the defendant has looked and smelled like he has consumed alcohol and a serious one car or head-on accident has occurred") (citations omitted).

**42.** Blank unsuccessfully challenged the use of the preliminary breath test results in the superior court. The court of appeals did not reach that issue. Because the issues to be briefed in the petition now before us did not include that topic, we express no opinion on it. Blank may reassert her arguments on that issue in the lower courts.

was no time to seek out a magistrate and secure a warrant.[43]

Many courts have implicitly or explicitly held that the dissipation of alcohol always creates sufficient exigency to dispense with the warrant requirement,[44] although at least one court has held that the state must prove exigency on a case-by-case basis.[45]

But we decline to address this aspect of the exigent circumstances question presented in this case. Because the lower courts were obliged to follow *Layland's* arrest requirement, and because there was no dispute that Blank was not arrested contemporaneously with the search of her breath, no lower court has yet reached the issue whether exigent circumstances actually justified Trooper Tyler's search. Accordingly, we remand to the superior court the issue whether exigent circumstances justified Trooper Tyler's search of Blank's breath.

## IV. CONCLUSION

For these reasons, we REVERSE the court of appeals's decision requiring suppression of the breath test results and REMAND so that the superior court can determine whether exigent circumstances justified the warrantless search.

**43.** *Schmerber,* 384 U.S. at 770–71, 86 S.Ct. 1826 (citations omitted).

**44.** *E.g., United States v. Reid,* 929 F.2d 990, 993 (4th Cir.1991) (categorically rejecting defendant's argument that state could have obtained warrant prior to extracting blood because "compliance with [federal telephonic warrant] rules takes time. Time is what is lacking in these circumstances."); *Ry. Labor Executives' Ass'n v. Burnley,* 839 F.2d 575, 583 (9th Cir.1988) ("We can agree that the exigencies of testing for the presence of alcohol and drugs in blood, urine or breath require prompt action which precludes obtaining a warrant.") (citations omitted), *rev'd on other grounds, Skinner v. Ry. Labor Executives' Ass'n,* 489 U.S. 602, 613, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); *People v. Shepherd,* 906 P.2d 607, 610 (Colo.1995) (presuming exigency and allowing warrantless search "[b]ecause alcohol dissipates quickly in the blood"); *State v. Ravotto,* 169 N.J. 227, 777 A.2d 301, 315 (2001) (finding that "consistent with *Schmerber* and our analogous case law, the dissipating nature of the alcohol content in defendant's blood presented an exigency that required prompt action by the police. Under those conditions, a warrantless

MATTHEWS, Justice, with whom CARPENETI, Justice, joins, dissenting in part.

MATTHEWS, Justice, with whom CARPENETI, Justice, joins, dissenting in part.

I disagree with one aspect of today's opinion. Instead of remanding so that the superior court may decide in the first instance whether exigent circumstances are inherently present where there is a breathalyzer test under AS 28.35.031(g) based on probable cause that the person tested has committed a crime and that the test will produce relevant evidence (and if not whether exigent circumstances existed under the particular facts of this case), I think this court should decide the question now. The homicide in this case occurred more than nine years ago, and further delay should be avoided, if reasonably possible. The question is briefed, and the state of the law is accurately represented in notes 44 and 45 and the related text of the court's opinion. All that remains is for the court to make a decision.

The decision is not a difficult one. Because the body dissipates alcohol over the course of a few hours, most jurisdictions have held that an exigency exists that dispenses with the need for a warrant whenever alcohol is relevant evidence.[1] *Of course probable*

search was justified."); *State v. Bohling,* 173 Wis.2d 529, 494 N.W.2d 399, 400 (1993) ("[T]he dissipation of alcohol from a person's blood stream constitutes a sufficient exigency to justify a warrantless blood draw.").

**45.** *State v. Moylett,* 313 Or. 540, 836 P.2d 1329, 1335 (1992) (suppressing blood test where police "could have obtained a search warrant without sacrificing evidence"). *Moylett* further noted, however, that "[i]n the context of an alcohol-related crime, there commonly will be an exigency because, as we already have noted, a suspect is 'a vessel containing evidence of a crime he had committed—evidence that [i]s dissipating with every breath he t[akes].' " *Id.* (citation omitted).

**1.** Authorities in addition to those set out in footnote 44 of the opinion of the court indicating that alcohol creates a per se exigency include: *State v. Cocio,* 147 Ariz. 277, 709 P.2d 1336, 1345 (1985) (evanescent nature of alcohol in defendant's blood stream is exigent circumstance since alcohol in a suspect's blood is certain to disappear); *People v. Ritchie,* 130 Cal.App.3d 455, 458, 181 Cal.Rptr. 773 (Cal.App.1982) ("In

cause to believe that the person to be tested has committed a crime and that a test for alcohol will produce relevant evidence is still required. For the reasons that follow, I agree with the majority rule when, as here, the search in question is no more intrusive than a breath test.

First, the physiological basis for the rule—the relatively rapid elimination of alcohol from the body—is beyond dispute. The rule is easy for the police officer in the field to understand and follow. It eliminates difficult and often undeterminable questions—and litigation of those questions—as to whether a warrant application might have been prepared and presented to a judge in time for a warrant to have issued and a test conducted before alcohol levels were diminished beyond the limits of reliable testing.

Second, we adopted a categorical approach to body alcohol evidence under an exigent circumstances exception in *Anchorage v. Geber.*[2] There we rejected an argument that the defendant had a right to have counsel present during field sobriety tests that were conducted at the police station after the defendant had already been arrested.[3] She argued that the right to counsel at such tests was analogous to the right to have counsel present at a pre-indictment line-up. We had recognized in *Blue v. State*[4] that the latter right was subject to an exigent circumstances exception—"unless exigent circumstances exist so that providing counsel would unduly interfere with a prompt and purposeful investigation."[5] In *Geber* we rejected the defendant's right to counsel argument categorically, without examining whether under the particular facts of the case the presence of counsel at the police station could have quickly been secured. We stated:

> Field sobriety tests are used to determine whether a suspect has used alcohol and, if so, the degree to which his mental and physical skills have been impaired. It is common knowledge that one's ability to perform such tests is influenced by the percentage of alcohol in his or her blood, and that that percentage diminishes with the passage of time. Such being the case,

intoxication by alcohol, the special factor that the percentage of alcohol in the blood begins to diminish shortly after its consumption triggers the warrantless intrusion into the body."); *State v. Taylor*, 12 Conn.App. 427, 531 A.2d 157, 160–61 (1987) (exigent circumstance consisting of dissipation of blood alcohol content justified breathalyzer tests); *State v. Entrekin*, 98 Hawai'i 221, 47 P.3d 336, 348 (2002) (exigent circumstances clearly present because alcohol dissipates from bloodstream); *State v. Woolery*, 116 Idaho 368, 775 P.2d 1210, 1212 (1989) ("[T]he destruction of the evidence by metabolism in the blood provides an inherent exigency which justifies the warrantless search."); *DeVaney v. State*, 259 Ind. 483, 288 N.E.2d 732, 735 (1972) (exigent circumstances present since the evidence of blood alcohol content "might soon disappear during the time necessary to obtain the warrant"); *State v. Baker*, 502 A.2d 489, 493 (Me.1985) ("The bodily process that eliminates alcohol also provides exigent circumstances obviating the need for a warrant prior to administering a blood test."); *State v. Lerette*, 858 S.W.2d 816, 819 (Mo.App.1993) (exigent circumstances exist because "the percentage of alcohol in the bloodstream diminishes with time" and "the delay caused by having to obtain a warrant might result in the destruction of evidence"); *Commonwealth v. Anderl*, 329 Pa.Super. 69, 477 A.2d 1356, 1364 (1984) ("[T]he warrantless seizure of the appellant's alcohol-laden breath is valid either as a search incident to arrest or a search necessitated by exigent circumstances; i.e., the evanescent nature of the alcohol in appellee's [sic] bloodstream."); *State v. Humphreys*, 70 S.W.3d 752, 760–61 (Tenn. Crim.App.2001) ("Based upon the fact that evidence of blood alcohol content begins to diminish shortly after drinking stops, a compulsory breath or blood test, taken with or without the consent of the donor, falls within the exigent circumstances exception to the warrant requirement."); *Aliff v. State*, 627 S.W.2d 166, 170 (Tex.Crim.App.1982) (because "alcohol in blood is quickly consumed and the evidence would be lost forever," the warrantless taking of blood does not violate the Fourth Amendment); *Tipton v. Commonwealth*, 18 Va.App. 370, 444 S.E.2d 1, 3 (1994) ("[E]xigent circumstances existed due to the dissipating nature of alcohol in the blood."); *Bennett v. Coffman*, 178 W.Va. 500, 361 S.E.2d 465, 469 (1987) *overruled on other grounds by State v. Chase Securities, Inc.*, 188 W.Va. 356, 424 S.E.2d 591 (1992) (Warrantless administration of blood-alcohol test did not violate plaintiff's constitutional rights based on "destruction of evidence" exception to the warrant requirement).

2. 592 P.2d 1187 (Alaska 1979).

3. *Id.* at 1192.

4. 558 P.2d 636 (Alaska 1977).

5. *Geber*, 592 P.2d at 1191 (quoting *Blue*, 558 P.2d at 642).

if the tests are to provide any real indicator of the degree of impairment, if any, existing at the time of the alleged offense, they must be performed as soon thereafter as possible. This fact alone distinguishes such cases from the usual lineup situation ..., where the passage of a few hours would have little or no effect.[6]

*Geber's* categorical, rather than case-by-case, treatment of diminishing alcohol-related evidence in the context of the exigent circumstances exception to the right to counsel indicates that a similar approach should be taken in the context of the same exception to the warrant requirement.[7]

**6.** *Id.*

**7.** In some other circumstances the presence of exigent circumstances is also analyzed categorically, rather than on a case-by-case basis. When an arrest is made and a search for evidence is conducted, the justification for the search is exigent circumstances, because otherwise the person arrested might destroy or dispose of the evidence. *McCoy v. State,* 491 P.2d 127, 135–37 (Alaska 1971); *Hinkel v. Municipality of Anchorage,* 618 P.2d 1069, 1070 (Alaska 1980) (recognizing "the two reasons justifying searches incident to arrests, protecting the arresting officer and preventing the destruction of evidence"). When, in the course of such a search, a closed container is found on the person arrested, the container may be opened without a warrant. *Id.* at 1070; *Middleton v. State,* 577 P.2d 1050, 1055 (Alaska 1978); *McCoy,* 491 P.2d at 139. This is so even though it would be possible for the police to simply take the container from the person—thus removing the exigency of possible destruction of evidence—and seek a warrant to search the container. *Hinkel,* 618 P.2d at 1070 (recognizing that "it is not strictly necessary to open a closed container found on the person of one who is arrested in order to protect the arresting officer from the use of a hidden weapon or to prevent the destruction of evidence. These goals can ordinarily be accomplished simply by seizing the container and removing it from the reach of the arrestee.").

**8.** AS 28.35.031(a) is similar to "implied consent" statutes that exist in most other states. It has been in existence for more than 34 years, *see* ch. 83, § 1, SLA 1969, and has received judicial approval. *See Burnett v. Anchorage,* 678 P.2d 1364, 1372 (Alaska App.1984) (Bryner, C.J., concurring); *Burnett v. Municipality of Anchorage,* 806 F.2d 1447, 1451 (9th Cir.1986). Similar "implied consent" statutes have "almost uniformly withstood various constitutional attacks." *State v. Moore,* 79 Wash.2d 51, 483 P.2d 630, 632 (1971) (en banc); *see e.g., Kellum v. Thorneycroft ex rel. Arizona Highway Dep't Motor Vehicle Div.,*

Finally, an especially persuasive reason to conclude that no case-by-case examination of exigent circumstances is required for breath searches under subsection .031(g) lies in the fact that the underlying rationale for such searches is the same as the rationale for garden variety drunk driving breath searches under subsection .031(a). As to the latter it is clear that no case-by-case examination of exigent circumstances is required.[8] Because this categorical treatment of the exigency requirement is valid with respect to subsection .031(a), such treatment should likewise be valid when applied to subsection .031(g).

Subsections .031(a) and .031(g) both give statutory authorization for breath tests.[9]

133 Ariz. 115, 649 P.2d 994, 995–96 (Ariz.App. 1982); *Spurlock v. Dep't Motor Vehicles,* 1 Cal. App.3d 821, 830, 82 Cal.Rptr. 42 (1969); *People v. Brown,* 174 Colo. 513, 485 P.2d 500 (1971) (en banc); *Morrow v. State,* 303 A.2d 633, 635 (Del. 1973); *People v. Farr,* 63 Ill.2d 209, 347 N.E.2d 146, 149 (1976); *Newman v. Stinson,* 489 S.W.2d 826, 830 (Ky.1972); *State v. Manley,* 189 Neb. 415, 202 N.W.2d 831, 833 (1972); *Anderson v. MacDuff,* 208 Misc. 271, 143 N.Y.S.2d 257, 259 (N.Y.Sup.1955); *State v. Starnes,* 21 Ohio St.2d 38, 254 N.E.2d 675, 678–80 (1970); *Winter v. Mayberry,* 533 P.2d 968, 969 (Okla.1975); *Haag v. Commonwealth,* 66 Pa.Cmwlth. 249, 443 A.2d 888, 889 (1982); *State v. Brean,* 136 Vt. 147, 385 A.2d 1085, 1088 (1978).

**9.** AS 28.35.031(a) provides in relevant part:

A person who operates or drives a motor vehicle in this state ... shall be considered to have given consent to a chemical test or tests of the person's breath for the purpose of determining the alcohol content of the person's blood or breath if lawfully arrested for an offense arising out of acts alleged to have been committed while the person was operating or driving a motor vehicle ... while under the influence of an alcoholic beverage.... The test or tests shall be administered at the direction of a law enforcement officer who has probable cause to believe that the person was operating or driving a motor vehicle ... in this state while under the influence of an alcoholic beverage ....

AS 28.35.031(g) provides:

A person who operates or drives a motor vehicle in this state shall be considered to have given consent to a chemical test or tests of the person's breath and blood and shall be considered to have given consent to a chemical test or tests of the person's blood and urine for the purpose of determining the presence of controlled substances in the person's blood and urine if the person is involved in a motor vehicle accident that causes death or serious

The first applies to typical drunk driving situations whereas the second applies to cases where there is a car accident involving death or serious injury to another person. Under both subsections, the reason for administering the breath test is to obtain relevant evidence of the person's blood alcohol content. The rationale underlying the treatment of exigency under both subsections is the same: to avoid the destruction of evidence through the body's dissipation of alcohol. And the elements required for a constitutionally permissible search under *Schmerber v. State of California* are the same for both subsections: (1) probable cause to believe that the person to be tested has committed a crime; (2) probable cause to believe that a breath test will produce evidence relevant to the crime; and (3) exigent circumstances.[10] Because the rationale and the constitutional requirements for subsections .031(a) and .031(g) are the same, there is no reason to recognize the inherent exigency created by the presence of alcohol in the body when subsection .031(a) is in play but fail to do so when the subsection in question is .031(g).

Today's opinion makes clear that it is probable cause, not the fact of the arrest, that justifies a search for body alcohol content. As construed today, the requirements of subsections .031(a) and .031(g) are parallel.[11] When the police officer on the scene can make the probable cause determinations required by *Schmerber* under subsection (a) as to crimes (a) applies to, he can administer a breath test. There is no reason to require more when the officer makes the same determinations in a case arising under subsection (g) as to crimes to which that subsection applies.

Today's opinion holds that the police officer who tested Blank had probable cause to believe that she had just been involved in a motor vehicle accident causing death, that she had committed a crime, and that a breath test for alcohol would produce relevant evidence. I agree with these conclusions and believe that since they parallel the constitutionally required elements for a search under subsection .031(a) we should conclude, as in cases arising under .031(a), that exigent circumstances sufficient to justify the breath test that was given were present. As the Fourth Circuit stated in *United States v. Reid:*

> Society has a recognized interest in protecting its citizens from drunk drivers. Breathalyzer tests cause a lesser intrusion than blood tests. Time is of the essence when testing for alcohol in the bloodstream. The combination of these factors sets out exigent circumstances which are sufficient to require that the police be allowed to test drunk drivers without first having to obtain a warrant.[12]

For these reasons, I conclude that the exigent circumstances exception to the warrant requirement has been satisfied and would therefore remand this case with instructions to reinstate Blank's conviction.

**10.** 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

**11.** *See* Op. at 162–163.

**12.** 929 F.2d 990, 994 (4th Cir.1991).